ROLANDO A. SILVA IGLECIA, demandante y recurrido, *v.* PANEL SOBRE EL FISCAL ESPECIAL INDEPENDIENTE, demandado y recurrente.

*Número:* CE-93-658 *Resuelto:* 24 de enero de 1995

*Diana Ortiz Vissepó*, abogada del recurrente; *Julio Eduardo Torres*, abogado del recurrido.

EL JUEZ PRESIDENTE SEÑOR ANDRÉU GARCÍA emitió la opinión del Tribunal.

El Panel sobre el Fiscal Especial Independiente (en adelante el Panel) recurre ante nos para que revisemos una sentencia del Tribunal Superior, Sala de San Juan (Hon. Ángel G. Hermida, Juez), en la cual dicho foro ordenó al Panel que entregara al recurrido Senador Rolando A. Silva Iglecia el expediente completo que el Panel tuvo ante sí cuando determinó la designación de un Fiscal Especial Independiente (en adelante F.E.I.).

Por entender que bajo la Ley del Fiscal Especial Independiente (en adelante Ley del F.E.I.), Ley Núm. 2 de 23 de febrero de 1988 (3 L.P.R.A. secs. 99h–99z), la persona investigada *no* tiene derecho a obtener el expediente investigativo que el Panel tenga ante sí al momento de nombrar un F.E.I., revocamos la sentencia recurrida.

I

El 25 de septiembre de 1992, la Contralor de Puerto Rico, Hon. Ileana M. Colón Carlo, recomendó al entonces Secretario de Justicia, Hon. Jorge L. Pérez Díaz, la designación de un F.E.I. a los fines de que se revisaran las operaciones de la oficina del Senador Rolando A. Silva Iglecia. A raíz de dicha recomendación, el Secretario de Justicia realizó una investigación preliminar y, el 15 de octubre de 1992, recomendó al Panel la designación de un F.E.I. para investigar la imputación de que el Senador Silva mantenía en su oficina unos empleados asignados a ésta "con el fin de realizar durante horas laborables trabajos de naturaleza legal y de bienes raíces relacionados con asuntos privados suyos, labores ajenas a la función pública".[1] Carta de 15 de octubre de 1992, pág. 1. Dicha determinación le fue notificada al Senador Silva por parte del Secretario de Justicia mediante Carta de 15 de octubre de 1992.

Luego de analizar el informe que le sometiera el Secretario de Justicia, el Panel concluyó que las circunstancias del caso ameritaban la designación de un F.E.I. conforme con lo dispuesto en los Arts. 4 y 11 de la Ley del F.E.I., 3 L.P.R.A. secs. 99k y 99r. La Resolución del Panel de 12 de febrero de 1993, pág. 1, en la cual concluye que se amerita la designación de un F.E.I., hace referencia a "los hechos imputados en la investigación realizada por la División para Combatir la Corrupción Gubernamental del Departa-

---

[1] El Art. 8(1) de la Ley del Fiscal Especial Independiente (en adelante Ley del F.E.I.) dispone, en lo pertinente, lo siguiente:

"(1) Para determinar si existe causa para conducir una investigación preliminar, el Secretario de Justicia tomará en consideración los siguientes factores:

"(a) La seriedad de la imputación que se hace;

"(b) el grado de participación que se imputa al funcionario o ex funcionario, empleado o ex empleado;

"(c) los datos y hechos en que esté basada la imputación;

"(d) la credibilidad de la persona que formula la imputación y de otras fuentes de información." 3 L.P.R.A. sec. 99o.

mento de Justicia, en relación con el Senador Rolando Silva Iglecia". Asimismo, se designó como F.E.I. al Lcdo. Federico Torres Jiménez, con la encomienda de concluir la investigación necesaria para determinar la procedencia de la presentación de aquellos cargos y aquellas acusaciones sobre los cuales entendiese que hubiera prueba suficiente.

El Senador Silva compareció ante el Panel en varios escritos de reconsideración para impugnar la designación del F.E.I. Alegó que se le habían violado derechos constitucionales y estatutarios importantes y, además, señaló que la designación del F.E.I. no era necesaria, puesto que ya había reembolsado al Estado lo que le había costado al erario público la preparación de algunas escrituras en su oficina del Senado. La moción fue declarada sin lugar por el Panel.

Inconforme, el Senador Silva compareció en segunda y tercera moción de reconsideración y, posteriormente, presentó un recurso de revisión ante el Tribunal Superior. Mediante dicho recurso, el Senador Silva le solicitó al tribunal que le ordenase al Panel permitirle examinar toda la documentación y evidencia que el Panel tuvo disponible, cuando decidió acoger la recomendación que le hiciera el Secretario de Justicia de nombrar un F.E.I. Adujo que la negativa del Panel de permitirle examinar dichos documentos le había impedido ejercer adecuadamente la facultad que le confería la Ley del F.E.I. de solicitar al Panel que revisara y no confirmara la recomendación del Secretario de Justicia de designar un F.E.I.

Luego de diversos incidentes procesales, el tribunal de instancia dictó una sentencia en la cual concluyó que la Ley del F.E.I. le impone unas restricciones al Panel cuando éste decide nombrar o no un F.E.I. Expresó que dichas restricciones o requisitos existen para proteger al investigado, por lo que el funcionario público debe tener derecho a asegurarse de que los requisitos se cumplan y que, por lo tanto, debe tener derecho a examinar la evidencia que tuvo disponible el Panel cuando determinó nombrar un F.E.I., a

fin de ejercer el derecho que el estatuto le concede al investigado de pedirle al Panel que revise y no confirme la recomendación del Secretario de Justicia de designar un F.E.I.

El tribunal de instancia determinó que el Senador Silva debía tener acceso a los documentos que tuvo ante sí el Panel cuando decidió aceptar la recomendación del Secretario de Justicia y que, una vez examinados los documentos, el Senador podría solicitar al Panel que reconsiderase su determinación de designar un F.E.I. De esta forma, el tribunal consignó que el Panel debía conceder "una vista al [Senador Silva] para que éste pueda someter sus argumentos y/o su propia evidencia sobre el particular, si tal vista fuese solicitada. El Panel emitirá entonces una nueva decisión .... Hasta tanto se haga todo lo anterior, el FEI no podrá iniciar trámite criminal alguno contra el [Senador Silva]". Sentencia de 6 de octubre de 1993, caso Civil Núm. KAC 93-0447 (Hon. Ángel G. Hermida, Juez), págs. 15–16.([2])

Inconforme con dicha determinación, acude ante nos el Panel para señalar que el foro de instancia incidió al interpretar el alcance de la Ley del F.E.I. y otorgarle al Senador Silva unas prerrogativas que dicho estatuto no le concede a un funcionario público que sea objeto de una investigación.

---

([2]) El tribunal de instancia determinó lo siguiente:

"Nos parece mucho más apropiado el remedio solicitado en la alternativa por el [Senador Silva], a saber, que el Tribunal devuelva el caso al Panel con instrucciones de que le permita al recurrente acceso a la totalidad del expediente que el Panel tuvo ante sí cuando determinó designar un FEI, de forma que el recurrente pueda entonces, luego de conocer el contenido del expediente, pedirle al Panel que reconsidere su decisión de nombrar un FEI, si el recurrente entiende que la información que el Panel tuvo ante sí en dicha etapa no satisfacía los requisitos que la Ley Núm. 2 de 1988 impone como condición para que el Panel pudiera v[á]lidamente nombrar un FEI." Sentencia de 6 de octubre de 1993, caso Civil Núm. KAC 93-0447, pág. 14.

"Sujeto únicamente a lo anterior, se expide el auto solicitado y se devuelve el caso al Panel sobre el Fiscal Especial Independiente, para que dicho Panel permita al aquí recurrente Senador Rolando A. Silva Iglecia examinar el expediente completo que el Panel tuvo ante sí cuando determinó designar un FEI. Nótese que la presente no obliga al FEI a dar acceso a la información que él haya podido obtener en su propia investigación, luego de su nombramiento por el Panel." Íd., pág. 15. "Hasta tanto se haga todo lo anterior, el FEI no podrá iniciar trámite criminal alguno contra el recurrente." Íd., págs. 15–16.

Aduce el Panel que el tribunal de instancia erró al resolver que el Senador Silva tuviese derecho al acceso del expediente investigativo ante el Panel en el momento de designar un F.E.I. y a la celebración de una vista administrativa fundamentada en el expediente en cuestión.(³)

En apoyo de su contención, el Panel sostiene que el tribunal le otorgó dichas prerrogativas al Senador y utilizó para ello inferencias equivocadas e incorrectas de la ley. Le asiste la razón al Panel. Veamos.

II

■ El cargo del F.E.I. se creó con la encomienda de que éste pudiese acudir a los tribunales en representación del Estado a instar las acciones criminales que procedan como resultado de las investigaciones que realice conforme los asuntos que le hayan sido asignados.

■ Para que le sea asignada una investigación a un F.E.I., el Secretario de Justicia realiza una investigación preliminar para determinar si se ha cometido cualquier delito de los mencionados en el estatuto. Posteriormente, y en conformidad con el Art. 4(3) y (5) de la Ley del F.E.I., 3 L.P.R.A. sec. 99k(3) y (5), ocurre lo siguiente:

(3) Cuando se conduzca una investigación con relación a actuaciones de cualesquiera de los funcionarios o individuos enumerados en el inciso (1) anterior, de ser necesaria la radicación de denuncias o acusaciones esta acción no podrá ser conducida por el Secretario de Justicia, recayendo siempre tal responsabilidad en el Fiscal Especial que designe el Panel.

Cuando el Secretario de Justicia llegue a una determinación de si recomienda o no el nombramiento de un Fiscal Especial *lo notificará* al querellante que solicitó el nombramiento del Fis-

---

(³) El Panel sobre el Fiscal Especial Independiente (en adelante el Panel) también señala que el tribunal a quo erró al resolver que el Senador Silva tuviese derecho a la revisión judicial de un F.E.I. y a una orden de *injunction* que prohibiera la presentación de cargos contra el funcionario recurrido. Debido a la decisión que tomamos ante los hechos particulares del caso de autos, no es necesaria la discusión de estos dos (2) señalamientos de error.

cal Especial y *al funcionario a quien se solicita investigar.*

. . . . . . . . .

(5) El Contralor de Puerto Rico, el Director de la Oficina de Ética Gubernamental o el querellante podrá solicitar al Panel dentro de quince (15) días a partir de la notificación recibida que revise la negativa del Secretario de Justicia a solicitar un Fiscal Especial. Igualmente, *el funcionario a ser investigado podrá solicitar al Panel* dentro de los quince (15) días a partir de la notificación recibida *que revise y no confirme la recomendación del Secretario de Justicia de que se designe un Fiscal Especial.*
Si el Panel determinare que no procede el nombramiento de un Fiscal Especial dicha determinación será final y firme y no podrá radicarse querella nuevamente por los mismos hechos. (Énfasis suplido.)

 Ciertamente, la Ley del F.E.I. le concede la prerrogativa al funcionario, objeto de la investigación, para solicitarle al Panel que revise y no confirme la recomendación del Secretario de Justicia. No obstante, el tribunal de instancia concluyó que el funcionario, para poder ejercer dicha prerrogativa, necesariamente debe tener acceso al expediente para asegurarse que la información sometida al Panel ha cumplido con los requisitos dispuestos en el Art. 11(c) de la Ley del F.E.I., 3 L.P.R.A. sec. 99r(c), a saber:

En todo caso el Panel designará un Fiscal Especial sólo cuando la información sometida cumple estrictamente con los siguientes requisitos:
(I) Proceda de una fuente de alta credibilidad;
(II) sea detallada, y
(III) establezca un alto grado de probabilidad de que se haya cometido cualesquiera de los delitos a que se hace referencia en la sec. 99k de este título.([4])

----

([4]) El texto íntegro del Art. 11 (1) de la Ley del F.E.I., 3 L.P.R.A. sec. 99r(1), es el siguiente:
"(1) El Panel podrá nombrar un Fiscal Especial en cualesquiera de los siguientes casos:
"(a) Cuando el Secretario de Justicia solicite el nombramiento y, de impugnarse la recomendación del Secretario, el Panel concluya, basado en el informe sometido por el Secretario y en cualquier otra información sometida a u obtenida por el Panel, que se amerita una investigación a fondo porque puede proceder la radicación de acusaciones o cargos.

No estamos de acuerdo con la interpretación del foro de instancia. Ésta no toma en consideración la naturaleza y los objetivos que tuvo el legislador al crear el Panel y otorgarle a éste la facultad para designar un F.E.I., supervisarlos y revisar las determinaciones que haga el Secretario de Justicia en relación con los alegados actos delictivos cometidos por funcionarios públicos cuya investigación y procesamiento debe referirse a un F.E.I.

■ Por esta razón, el Panel, en el descargo de sus funciones y utilizando los criterios del Art. 11(c) de la Ley del F.E.I., *supra*, como parámetros razonables, determinará si la información sometida cumple con dichos requisitos. Entendemos que permitirle al funcionario que examine el expediente investigativo resultaría en un menoscabo de la discreción e independencia decisoria que la Ley del F.E.I. le concedió a los miembros del Panel. De esto ser permitido, el funcionario que sea objeto de la investigación podría ejercer el poder o la influencia de su cargo para tratar de afectar la determinación que emitiese el Panel al recomendar la designación de un F.E.I., postergándose su función investigativa. Esta etapa de los procedimientos, después de todo, es investigativa, por lo que no culminará necesariamente en un procesamiento criminal del funcionario investigado.

---

"(b) Cuando en una acción para revisar una determinación negativa hecha por el Secretario de Justicia, el Panel determine, basado en el informe sometido por el Secretario o en cualquier otra información sometida a u obtenida por el Panel, que, contrario a la determinación del Secretario, se amerita una investigación más a fondo porque puede proceder la radicación de acusaciones o cargos.

"(c) Cuando de conformidad con la sec. 99m de este título se impute al Secretario la comisión de cualesquiera de los delitos a que se hace referencia en la sec. 99k de este título y el Panel determine que se amerita una investigación a fondo porque puede proceder la radicación de acusaciones o cargos. En todo caso el Panel designará un Fiscal Especial sólo cuando la información sometida cumple estrictamente con los siguientes requisitos:

"(I) Proceda de una fuente de alta credibilidad;

"(II) sea detallada, y

"(III) establezca un alto grado de probabilidad de que se haya cometido cualesquiera de los delitos a que se hace referencia en la sec. 99k de este título."

Cabe señalar que surge del debate del proyecto en la Cámara de Representantes, que la intención del legislador era que los procedimientos investigativos se atendiesen con premura. A esos efectos, el Representante Varela Fernández expresó lo siguiente:

> *Un detalle que es de mucha importancia es la ligereza que se quiere dar a toda investigación de esta clase.* Se le concede un término fijo al Secretario de Justicia para que haga la investigación preliminar debiendo solicitar una prórroga en aquellos casos que sea necesario, y también al Fiscal Especial se le concede un término de noventa días pudiendo solicitar una prórroga adicional en caso que también fuera necesario. *Sí, lo que se plantea es la ligereza, pero a la misma vez la seriedad, y también se le da la independencia económica para que pueda hacer la investigación correspondiente.* (Énfasis suplido.) Debate sobre el Sustitutivo al P. del S. 931 de 29 de enero de 1988, pág. 38.

No obstante el texto y los propósitos de la ley, el tribunal de instancia concluye que el Senador Silva tiene derecho a obtener toda la evidencia que tuvo disponible el Panel, si así él lo solicita, y señala que dicho cuerpo debe celebrar una vista para adjudicar la procedencia de un F.E.I. El tribunal aduce que el funcionario investigado no sólo está cobijado por los derechos que el estatuto le confiere, sino que también tiene un derecho de índole constitucional a tener un "acceso total al expediente que el Panel tuvo ante sí cuando determinó designar un FEI" (Sentencia de 6 de octubre de 1993, Caso Civil Núm. KAC 93-0447), con excepción de aquel "dato específico" que el Panel pudiese demostrar de forma concreta que caería bajo una de las categorías del Art. 16(2) de la Ley del F.E.I., 3 L.P.R.A. sec. 99w(2).

En fin, el tribunal a quo entendió que el hecho de que en esta etapa del proceso no hubiese acusación criminal alguna sino una investigación pendiente, no constituía causa suficiente para negarle al recurrido un derecho de acceso al expediente investigativo bajo el Art. 16 de la Ley del F.E.I., *supra.*

## III

■ No podemos perder de perspectiva que, en el caso de autos y en esta etapa de los procedimientos, la función del Panel y del F.E.I. es de *naturaleza investigativa.* El otorgarle al funcionario investigado "acceso a la totalidad del expediente" investigativo, como decretó el foro de instancia, podría resultar en menoscabo de la investigación en curso. Por estar involucrado un funcionario público en este caso, cobran mayor vigencia los pronunciamientos de esta Curia en *Soto v. Srio. de Justicia,* 112 D.P.R. 477, 495–496 (1982), a los efectos de que:

> ... [D]ebemos recalcar que *en lo concerniente a las investigaciones de corrupción de empleados y funcionarios públicos,* de crimen organizado y de terrorismo, hay que reconocer ab initio el poder del Estado de restringir el acceso a documentos, papeles o memoriales que se generen en el curso de una investigación de esta naturaleza. No hace falta mucho esfuerzo mental para comprender el interés legítimo y esencial que tiene el Estado en esta parte de la administración y seguridad pública. (Énfasis suplido.)

■ Más aún, discrepamos del foro de instancia en torno a su señalamiento de que "la ley que nos ocupa concede unos derechos específicos a la persona a ser investigada por el FEI, derechos que no tienen equivalente alguno en los casos de personas investigadas por los fiscales normales del Departamento de Justicia" y que por lo tanto, según dicho foro, es necesario que el funcionario investigado "tenga acceso a [toda] la información que el Panel tuvo ante sí cuando decidió designar un FEI" en aras de poder ejercer el derecho que la ley le confiere de solicitarle al Panel que revise y no confirme la recomendación del Secretario de Justicia. Sentencia de 6 de octubre de 1993, Caso Civil Núm. KAC 93-0447, pág. 13. Nótese que el Art. 4(3) de la Ley del F.E.I., antes citado, dispone que, una vez el Secretario de Justicia determina que procede el nombramiento de un fiscal, *estará obligado a notificarlo al funcio-*

*nario a quien se solicite investigar.* En este caso, tanto el Secretario de Justicia como la Contralor y el Panel, le notificaron al Senador Silva las imputaciones en su contra. Específicamente, la notificación hecha por la Contralor fue sumamente extensa y detallada. Prueba de ello es que el Senador Silva compareció ante el Panel en varias ocasiones para solicitar que no se confirmara la determinación del Secretario de Justicia. Claramente, no estamos ante un caso en el cual la persona investigada haya estado huérfana de información suficiente sobre la naturaleza de la investigación y las imputaciones en su contra.

Concurrimos, pues, con el señalamiento del recurrente a los efectos de que "[n]o hay nada en la Ley que sugiere que el recurrido tuviese derecho a más garantías procesales de las que recibió". En vista de toda la información que recibió, el Senador Silva está en posición de ejercer su derecho a solicitarle al Panel que revise y no confirme la recomendación del Secretario sin necesidad de obtener la evidencia que tuvo ante sí el Panel.

 ▪ Esta garantía procesal que le otorga el citado Art. 4(3) de la Ley del F.E.I. al funcionario investigado, no puede ir en detrimento de la facultad del Panel para nombrar un F.E.I. si a su juicio determina que se amerita realizar tal nombramiento, puesto que, conforme el propio Art. 4(2) de la Ley del F.E.I., 3 L.P.R.A. sec. 99k(2), "[au]n cuando la recomendación del Secretario fuere la de que no se designe un Fiscal Especial, éste vendrá obligado a referir su informe y el expediente completo del caso al Panel, *el cual podrá a su discreción nombrar un Fiscal Especial y ordenar la investigación del caso".* (Énfasis suplido.)

 ▪ En ausencia de una expresión legislativa al respecto, *los funcionarios públicos investigados bajo la Ley del F.E.I. no pueden tener más derechos de acceso al expediente investigativo que los derechos que tiene un ciudadano común que sea objeto de una investigación criminal.* Sabido es que *antes* de mediar una acusación criminal, el sumario

fiscal, esto es, el expediente del Ministerio Público que contiene las declaraciones juradas y la prueba del Fiscal, es privado y secreto. *Santiago v. Bobb y El Mundo, Inc.*, 117 D.P.R. 153, 163 (1986). En dicho caso señalamos lo siguiente:

Es válido suponer que *cierta información recopilada en el curso de una investigación criminal goza de la confianza de que no será divulgada, al menos hasta culminar la investigación y comenzarse el proceso acusatorio público en los tribunales u otros foros, ante las exigencias intrínsecas y dimanantes correspondientes al propio procedimiento.*

No hay duda que revelar la información que contienen ciertos expedientes, inclusive la confirmación de su existencia, podría acarrear serias y graves consecuencias. Se pueden "sustraer del escrutinio público determinados documentos e informes que estén ligados a la fase investigativa o preventiva del crimen y que por su naturaleza pongan innecesariamente en riesgo los resultados de una investigación en curso, la vida de informantes, confidentes y testigos, así como la de los propios empleados y funcionarios del Estado, o que de cualquier otro modo afecten verdaderamente la seguridad pública". *Soto v. Srio. de Justicia,* supra, pág. 495. *También podrían quedar al descubierto los objetivos, métodos o técnicas investigativas especiales. Esto alertaría a los violadores de ley. Ellos, conociendo anticipadamente la naturaleza de la causa en su contra, prepararían mejor sus defensas o provocarían la destrucción de evidencia, o abandonarían la jurisdicción.* (Citas omitidas y énfasis suplido.) *Santiago v. Bobb y El Mundo, Inc.,* supra, págs. 163–164.

Más aún, incluso *después* de que medie una acusación criminal, "[e]l descubrimiento de prueba a favor del acusado, que sólo se activa a partir de la acusación (pliego acusatorio), no incluye el material acumulado en el sumario o expediente fiscal que constituye producto del trabajo del Ministerio Público, en el sentido de interpretación de la evidencia recopilada. Por otra parte, hay mucho del sumario fiscal que de ser revelado implicaría dejar 'al descubierto los objetivos, métodos o técnicas investigativas especiales' ". E.L. Chiesa Aponte, *Derecho Procesal Penal de Puerto Rico y Estados Unidos*, Colombia, Ed. Forum, 1993,

V. III, Sec. 28.2, pág. 337, citando a *Santiago v. Bobb y El Mundo, Inc.*, supra, pág. 164.

*Si esta es la norma para todos los ciudadanos, ¿cómo los tribunales van a crear una norma distinta y más favorable para beneficiar a los funcionarios públicos investigados bajo la Ley del F.E.I., en ausencia de una intención legislativa a ese respecto?* Ello contravendría la intención del legislador de promover y preservar la integridad de los funcionarios y las instituciones públicas del Gobierno de Puerto Rico a través de los mecanismos dispuestos en la Ley del F.E.I. De avalar la norma creada por el tribunal de instancia en este caso, este Tribunal estaría erosionando el propósito de nuestra Asamblea Legislativa de diseñar un "componente esencial de un esquema integral e innovador ... con el propósito de restaurar la confianza del pueblo en su gobierno y en sus servidores públicos". Exposición de Motivos de la Ley Núm. 2 de 23 de febrero de 1988 (Ley del F.E.I.), 1988 Leyes de Puerto Rico 5, 6.([5])

---

([5]) "Puerto Rico ha sido un pueblo con un acervo envidiable por su tradición cultural, su compromiso inexorable con los principios fundamentales de convivencia democrática y, especialmente, la adhesión inquebrantable a los más preciados valores éticos y morales consubstanciales en la conducta de nuestra gente y en la de sus representantes en la función gubernamental: los servidores públicos.

"Nuestro pueblo tiene el convencimiento de que, como regla general, los órganos de gobierno han cumplido con su responsabilidad conforme a las exigencias más rigurosas de moralidad y excelencia.

"No obstante, por excepción, en ocasiones, servidores públicos hacen abstracción de estas sanas normas de moralidad y ética e incurren, ya sea en flagrante infracción a la ley o en prácticas malsanas e intolerables. Tales actuaciones indebidas generalmente suponen lucro ilegal en detrimento del patrimonio del estado, conflicto de intereses, especialmente financiero o acciones improcedentes de diversa índole.

"La proliferación de prácticas de la naturaleza de las reseñadas, ha creado una honda preocupación, no sólo en nuestro pueblo sino también en los que somos depositarios de su confianza por haber sido investidos de los poderes apropiados para proveerle a nuestro país una gestión ejemplar de gobierno.

"En el descargo de esa honrosa responsabilidad, y a los fines de prevenir, erradicar y penalizar cualquier comportamiento delictuoso o indebido por cualquier funcionario gubernamental *es imperativo que esta medida legislativa, que es componente esencial de un esquema integral e innovador sea aprobada con el propósito de restaurar la confianza del pueblo en su gobierno y en sus servidores públicos.*

"*El mecanismo del Fiscal Especial Independiente*, bajo la supervisión de un Panel nombrado por el Gobernador del Estado Libre Asociado de Puerto Rico y compuesto exclusivamente por Ex Jueces del Tribunal Supremo o Superior o de ambos, *garantiza la absoluta objetividad de investigaciones contra altos funcionarios del*

No surge, pues, del historial legislativo ni de la exposición de motivos de la Ley del F.E.I. una intención legislativa de crear un mecanismo de descubrimiento de prueba que constituya un trato privilegiado o preferencial para los altos funcionarios del Gobierno que puedan ser objeto de unas investigaciones en su contra. No podemos olvidar que una ley debe ser siempre interpretada tomando en consideración los fines que persigue y en forma tal que la interpretación se ajuste al fundamento racional o fin esencial de la ley y la política pública que la inspira. *Ind. Cortinera, Inc. v. P.R. Telephone Co.*, 132 D.P.R. 654 (1993); *Esso Standard Oil v. A.P.P.R.*, 95 D.P.R. 772, 785 (1968).

Del propio texto de la Ley del F.E.I., de su exposición de motivos y del historial legislativo surge con claridad que, con la adopción de la ley de marras, el legislador contempló "fortalecer los mecanismos que garantizan el funcionamiento efectivo del sistema de justicia criminal, al investigar y encausar casos y ciudadanos cuya investigación deba llevarse a cabo por otra unidad de la Rama Ejecutiva que no sea el Departamento de Justicia, bien sea por la función pública de la persona a ser investigada, o porque la investigación pueda crear serios conflictos de intereses al Departamento de Justicia". Tercer informe conjunto de la Cámara de Representantes de 29 de enero de 1988 sobre el P. del S. 931, 10ma Asamblea Legislativa, 4ta Sesión Ordinaria, pág. 12. El legislador añadió:

> Como es de conocimiento general *se han sucedido un determinado número de casos de corrupción y delitos en el Gobierno de Puerto Rico que nos mueven a buscar alternativas a los organismos tradicionales de encausamiento criminal para combatir con mayor eficacia y agilidad este tipo de conducta que corroe los cimientos de nuestras instituciones de gobierno y, al mismo*

*Gobierno. De igual importancia, la institución del Fiscal Especial Independiente y del Panel, provee un foro neutral e independiente para dilucidar palpablemente ante el pueblo supuestos o reales actos indebidos atribuibles a funcionarios gubernamentales, creándole así a funcionarios honestos un medio efectivo para preservar su integridad y reputación.*" (Énfasis suplido.) Exposición de Motivos de la Ley Núm. 2 de 23 de febrero de 1988, Leyes de Puerto Rico, págs. 5–6.

*tiempo, menoscaba la confianza de nuestro pueblo en ellas.* Consideramos que, *para dar mayor solidez a esa confianza pública,* que el pueblo deposita en sus legisladores, jueces, Gobernador y otros funcionarios de alto nivel de las entidades gubernamentales, *es menester crear mecanismos que operen aislados del ámbito de influencia de los propios funcionarios y ejecutivos públicos de alto nivel que en ocasiones son partícipes en la conducta que se pretende erradicar.* Íd., pág. 12.

█ Si el funcionario público *investigado* bajo la Ley del F.E.I. es eventualmente *acusado*, le ampara el mismo derecho de descubrimiento de prueba que tiene todo ciudadano acusado, conforme la Regla 95 de Procedimiento Criminal, 34 L.P.R.A. Ap. II. La citada Regla 95 dispone:

(a) *Previa moción del acusado sometida en cualquier momento después de haberse presentado la acusación o denuncia,* y dentro del término prescrito para someterla, el tribunal ordenará al Ministerio Fiscal que permita al acusado inspeccionar, copiar o fotocopiar el siguiente material o información que esté en posesión, custodia o control del Ministerio Fiscal:

(1) Cualquier declaración jurada que el Ministerio Fiscal tenga del acusado.

(2) Cualquier declaración jurada de los testigos de cargo que hayan declarado en la vista para determinación de causa probable para el arresto o citación, en la vista preliminar, en el juicio o que fueron renunciados por el Ministerio Fiscal y los récords de convicciones criminales previas de éstos.

(3) Cualquier resultado o informe de exámenes físicos o mentales y de experimentos o pruebas científicas que sea relevante para preparar adecuadamente la defensa del acusado o que vaya a ser utilizado en el juicio por el Ministerio Fiscal.

(4) Cualquier libro, papel, documento, fotografía, objeto tangible, estructura o lugar que sea relevante para preparar adecuadamente la defensa del acusado, que el Ministerio Fiscal se propone utilizar en el juicio o que fue obtenido del acusado o perteneciera al acusado.

(5) El récord de convicciones criminales previas del acusado.

(6) Cualquier informe preparado por agentes de la Policía en relación con las causas seguidas contra el acusado que sea relevante para preparar adecuadamente la defensa del acusado. El descubrimiento de esta prueba estará sujeto a las siguientes condiciones:

(A) Que los objetos, libros, documentos y papeles que el

acusado interesa examinar se relacionan o describen con suficiente especificación;

(B) que no afecte la seguridad del Estado ni las labores investigativas de sus agentes policíacos, y

(C) que la correspondiente moción del acusado sea presentada con suficiente antelación a la fecha señalada para la celebración del juicio, de manera que no haya innecesarias dilaciones en los procedimientos ni se produzcan molestias indebidas a los funcionarios del Estado.

(b) El Ministerio Fiscal revelará toda aquella evidencia exculpatoria del acusado que tenga en su poder.

(c) El Ministerio Fiscal deberá informar al tribunal si el material o la información solicitada no se encuentra en su posesión, custodia o control, en cuyo caso el tribunal ordenará a la persona o entidad que la posea, custodie o controle, que la ponga a la disposición del acusado.

(d) No estarán sujetos a descubrimiento o inspección de la defensa los escritos de investigación legal, informes, memorandos, correspondencia u otros documentos internos que contengan opiniones, teorías o conclusiones del Ministerio Fiscal. (Énfasis suplido.)

La Ley Núm. 58 de 1ro de julio de 1988 promulgó el texto vigente de la Regla 95, *supra*, que a su vez sustituyó la Regla 95 de Procedimiento Criminal de 1963. Ésta disponía:

*Previa moción del acusado sometida en cualquier momento después de haberse presentado la acusación*, el tribunal *podrá ordenar* al fiscal que produzca para ser inspeccionados, copiados o fotografiados por el acusado o su abogado, determinados objetos, libros, documentos y papeles que *no fueren declaraciones juradas*, con excepción de la declaración del propio acusado, que El Pueblo hubiese obtenido del acusado o de otras personas mediante orden judicial o de otro modo y que pudieren ser necesarios para la preparación de la defensa del acusado, independientemente de que El Pueblo se propusiese ofrecerlos en evidencia o de que los mismos fueren admisibles en evidencia. La orden especificará el tiempo, lugar y manera de hacer la inspección, de sacar las copias o tomar las fotografías y podrá prescribir los términos y condiciones que el tribunal estimare justos.[6] 34 L.P.R.A. Ap. II (ed. 1971).

_____

[6] En *Pueblo v. Tribunal Superior*, 102 D.P.R. 470, 479 (1974), dijimos, en cuanto al procedimiento de descubrimiento de prueba bajo la Regla 95 de Procedi-

## IV

██ El Art. 16 de la Ley del F.E.I. dispone:

(1) Con anterioridad a la radicación del informe final el Fiscal Especial no podrá divulgar, excepto al Panel, cualquier información obtenida durante el curso de su investigación.

(2) *A fin de preservar la confidencialidad de las investigaciones y los derechos de las personas imputadas, el Panel no podrá divulgar la información que le haya sido sometida y prohibirá el acceso del público a los procesos que ventile. Por vía de excepción, en los casos en que le sea requerido, el Panel podrá divulgar información o datos bajo su control cuando tal divulgación:*

(a) *No interfiere indebidamente con alguna acción judicial o investigación pendiente;*

(b) no priva a la persona del derecho a un juicio justo o a una sentencia imparcial;

(c) no constituye una intromisión irrazonable en la privacidad;

(d) no revela la identidad de una fuente confidencial de información;

(e) no expone al público técnicas o procedimientos investigativos que afecten el curso de estas investigaciones, y

(f) no expone la vida o la seguridad física de funcionarios, personas o testigos. (Énfasis suplido.) 3 L.P.R.A. sec. 99w.

██ Cabe señalar que estos seis (6) subincisos del Art. 16(2) fueron copiados por el legislador puertorriqueño de los seis (6) criterios federales de la ley federal *Freedom of Information Act* (F.O.I.A.), 5 U.S.C. sec. 552b(7). Cabe indicar, además, que ninguno de los casos de este Tribunal, que cita el juez de instancia en el último párrafo de su

---

miento Criminal, 34 L.P.R.A. Ap. II, entonces vigente: "El procedimiento de la Regla 95 no confiere, sin embargo, un derecho absoluto a descubrir todos los documentos y objetos a que la Regla se refiere. El acusado tiene derecho a solicitar el descubrimiento 'en cualquier momento después de haberse presentado la acusación.' Su concesión es, sin embargo, función que descansa en la facultad discrecional del tribunal que juzga el caso. En el descargo de esa función deberá el tribunal establecer un justo balance entre los derechos del acusado y los intereses del Estado. Para ello deberá tomar en consideración si los objetos, libros, documentos y papeles que el acusado interesa examinar se relacionan o describen con suficiente especificación y son pertinentes para su defensa; su importancia para la seguridad del Estado o la confidencialidad de la labor investigativa; y la razonabilidad de la petición tomando en cuenta sus propósitos, de manera que no haya innecesarias dilaciones en los procedimientos ni hostigación o molestias indebidas a los funcionarios del Estado."

sentencia para sustentar su conclusión en el caso de autos,[7] le reconoce un derecho constitucional a una persona que esté bajo una investigación criminal pendiente, y que no haya sido acusado, a tener acceso al expediente investigativo. De hecho, la jurisprudencia de este Tribunal ha reconocido que el derecho constitucional a la información bajo el control del Gobierno está sujeto a consideraciones de interés público que pueden tener preeminencia sobre los derechos del individuo. Específicamente, en *Soto v. Srio. de Justicia*, supra, este Tribunal consagró el derecho constitucional del pueblo a tener acceso a la información en poder del Estado. Establecimos, sin embargo, que dicho derecho no puede ser absoluto. El margen de restricción al derecho de acceso a información gubernamental es más amplio cuando se trata de documentos relacionados a procedimientos investigativos como el del caso de autos.

En *Soto v. Srio. de Justicia*, supra, pág. 495, reconocimos expresamente que "la Asamblea Legislativa puede aprobar legislación para sustraer del escrutinio público determinados *documentos e informes que estén ligados a la fase investigativa o preventiva del crimen* y que por su naturaleza pongan innecesariamente en riesgo los resultados de una investigación en curso, la vida de informantes, confidentes y testigos, así como la de los propios empleados y funcionarios del Estado, o que de cualquier otro modo afecten verdaderamente la seguridad pública". (Énfasis suplido.)

La legislación particular impugnada en el caso de *Soto v. Srio. de Justicia*, supra, fue declarada inconstitucional de su faz puesto que prohibía, en términos absolutos y sin que hubiese trámites pendientes, la divulgación de toda información investigativa durante un período de treinta (30) años. A su vez, señalamos que una ley que tuviese

---

[7] *Soto v. Srio. de Justicia*, 112 D.P.R. 477 (1982); *Santiago v. Bobb y El Mundo, Inc.*, 117 D.P.R. 153 (1986); *López Vives v. Policía de P.R.*, 118 D.P.R. 219 (1987), y *Rivera González v. Danny's Bakery*, 121 D.P.R. 304 (1988).

criterios razonables, que limitara la divulgación de información, podría cumplir con los requisitos constitucionales.

■ Este Tribunal reconoció que los seis (6) estándares que limitan la divulgación de los expedientes de investigación bajo la sec. 552b(7) de la Ley federal *Freedom of Information Act* cumplían plenamente con los requisitos constitucionales, no obstante el hecho de que este esquema le reconocía "una amplia discreción a los administradores" federales en la aplicación de estos criterios.

Debemos recalcar que los seis (6) subincisos del Art. 16(2) de la Ley del F.E.I., antes citados, fueron copiados de los seis (6) criterios de la sec. 552b(7) del *Freedom of Information Act para así cumplir con las exigencias constitucionales establecidas por este Tribunal en el caso de Soto v. Srio. de Justicia, supra*. Como cuestión de hecho, en el caso *Soto v. Srio. de Justicia*, supra, citamos, en español, los seis (6) subincisos mencionados de la sec. 552b(7) del *Freedom of Information Act* referentes a la excepción particular sobre "récords investigativos" y expresamos que "el esquema contenido en la ley federal —aunque reconoce una amplia discreción a los administradores en esas áreas expresamente mencionadas— consigna estándares más o menos específicos que guían de algún modo tal discreción, de suerte que su ejercicio no sea producto del capricho sino de un ponderado balance de los intereses en conflicto". Íd., pág. 501.

En este sentido, el Tribunal Supremo de Estados Unidos resolvió en *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214 (1978), por voz del Juez Thurgood Marshall, que la agencia investigativa (la Junta de Relaciones del Trabajo federal, en ese caso) no tiene que demostrarle, de forma específica, al tribunal que la divulgación de cada documento interfiere con una investigación pendiente. La agencia cumple con la ley al demostrar que la divulgación de la clase de expediente en cuestión interfiere con la clase de investigación pendiente. El Tribunal avaló la política de la

Junta de negar el acceso a las declaraciones de testigos que fueron obtenidas durante investigaciones de prácticas laborales ilegales (*unfair labor practices*). El Tribunal señaló que la divulgación podría permitir, entre otras cosas, que los patronos o las Uniones coaccionasen a testigos potenciales para que cambien sus testimonios o para que ni siquiera testifiquen. Más aún, se señala que algunas personas podrían negarse a proveer información a los investigadores si supiesen que sus declaraciones se convertirían en documentos públicos. A la luz de estas posibilidades, se resolvió que no era necesario que la Junta ni que los tribunales condujesen un examen oneroso caso a caso sobre el daño que se pudiese causar como resultado de una divulgación particular de las declaraciones de los testigos. La agencia puede tratar dichas declaraciones como "exentas" de divulgación bajo la sec. 552b(7)(A) (*FOIA Exemption 7(A)*), el equivalente al Art. 16(2)(a) de la Ley del F.E.I., *supra*, relacionado con la no divulgación de información o datos, si tal divulgación "interfiere indebidamente con alguna acción judicial o investigación pendiente".

En apoyo de su determinación, el Tribunal Supremo federal añadió lo siguiente:

> Although Congress could easily have required in so many words that the Government in each case show a particularized risk to its individual "enforcement proceedin[g]," it did not do so; [esc. 15: Indeed, Congress failed to enact proposals that might have had this effect]. *NLRB v. Robbins Tire & Rubber Co.*, supra, pág. 234 y esc. 15.

La concisa opinión concurrente del Juez Stevens en el caso *NLRB v. Robbins Tire & Rubber Co.*, supra, pág. 243, a la cual se unió el Juez Presidente Rehnquist, señala *in toto* lo siguiente:

> The "act of meddling in" a process is one of Webster's accepted definitions of the word "interference". [*: One of the definitions of "interference" is "the act of meddling in or hampering

an activity or process." Webster's Third New International Dictionary 1178 (1961).] A statute that authorized discovery greater than that available under the rules normally applicable to an enforcement proceeding would "interfere" with the proceeding in that sense. The Court quite correctly holds that the Freedom of Information Act does not authorize any such interference in Labor Board enforcement proceedings. Its rationale applies equally to any enforcement proceeding. On that understanding, I join the opinion.

Además, en *FBI v. Abramson*, 456 U.S. 615 (1982), el Tribunal Supremo de Estados Unidos estableció que la exclusión de los expedientes investigativos de la divulgación pública bajo el *Freedom of Information Act* constituye una exclusión categórica; los tribunales no deben balancear los intereses caso por caso. Dijo el Tribunal:

Once it is established that information was compiled pursuant to a legitimate law enforcement investigation and that disclosure of such information would lead to one of the listed harms, the information is exempt. *Congress thus created a scheme of categorical exclusion; it did not invite a judicial weighing of the benefits and evils of disclosure on a case-by-case basis.* (Énfasis suplido.) *FBI v. Abramson*, supra, pág. 631.

 Similarmente, resolvemos que en el caso de autos el Panel puede determinar, en el ejercicio de sus poderes discrecionales, que el expediente investigativo en su totalidad está exento de divulgación pública en la etapa investigativa porque la divulgación de dicho expediente en sí *"interfiere indebidamente" con la investigación pendiente.* Art. 16(2)(a) de la Ley del F.E.I., *supra*. No tiene que demostrar el Panel, como pretende el juez de instancia, que la divulgación de cada "dato específico" resultaría concretamente en uno (1) de los seis (6) criterios o estándares enumerados en el Art. 16(2) de la Ley del F.E.I., *supra*.

## V

Por último, en su sentencia, el juez de instancia señaló lo siguiente:

... [N]os parece que el planteamiento verdaderamente importante del recurso es aquel en que se argumenta que la negativa del Panel de permitirle al recurrente examinar todos los documentos y evidencia que el Panel tuvo disponible cuando decidió acoger la recomendación que le hiciera el Secretario de Justicia de nombrar un FEI, impidió al recurrente el poder ejercitar adecuadamente la facultad que le confiere el estatuto de "solicitar al Panel ... que revise y no confirme la recomendación del Secretario de Justicia de que se designe un fiscal especial." Ver inciso (5) del artículo 4 de la Ley #2 de 1988, 3 LPRA 99k. Sentencia de 6 de octubre de 1993, pág. 2.

No obstante dicho señalamiento, es importante mencionar que el propio juez de instancia reconoció en su sentencia que

[e]*n el caso particular que nos ocupa* se desvanece en gran parte el problema relativo a la decisión del Secretario de Justicia de recomendarle al Panel la designación de un FEI, ya que no parece estar en disputa que *la decisión del Secretario respondió a un pedido anterior que le fuera hecho al Secretario por la Contralor de Puerto Rico.* El inciso 2 del artículo 8 de la ley, 3 LPRA 99o, dispone expresamente que *siempre será causa suficiente para que el Secretario de Justicia investigue cuando esa investigación obedece a una solicitud que le hubiese sido hecha por el Contralor.* (Énfasis suplido.) Sentencia de 6 de octubre de 1993, pág. 5.

El Art. 8(2) de la Ley del F.E.I., 3 L.P.R.A. sec. 99o, al que hace referencia el juez de instancia, dispone:

Se considerará causa suficiente para investigar, a los fines del inciso (1) de esta sección, cualquier informe del Contralor o de la Oficina de Ética Gubernamental recomendándole al Secretario de Justicia la radicación de cargos criminales contra cualquiera de los funcionarios cubiertos por las disposiciones de las secs. 99h a 99z de este título.

Cabe recalcar que, precisamente por la información pormenorizada que le ofreció la Contralor al Senador Silva, éste tuvo acceso a información y documentación suficiente como para conocer la naturaleza de la investigación en su contra desde una etapa temprana. Meses antes de la resolución del Panel, mediante la cual se designó un F.E.I., la

naturaleza de la investigación le había sido informada al Senador Silva por la Contralor, el 7 de octubre de 1992. La información suministrada al Senador Silva en esa fecha incluye un borrador del informe de la Contralor, el cual contiene una relación detallada de los hallazgos revelados por la auditoría efectuada en la oficina del Senador Silva en el Senado de Puerto Rico. Como antes señalamos, la amplia información suministrada al Senador Silva por la Contralor le permitió a éste reaccionar en varias ocasiones a las revelaciones de la investigación. La información pormenorizada incluyó una "Notificación de Derechos" con detalles sobre los hallazgos de la auditoría realizada en la oficina del Senador. Más aún, a petición del Senador Silva, la Oficina del Contralor puso a su disposición toda la documentación disponible que estuviera relacionada con la auditoría mencionada, salvo las declaraciones juradas de los testigos. Luego de ello, al enterarse que el asunto había sido referido al Secretario de Justicia "para su evaluación y acción" correspondiente, el Senador Silva le envió a éste una Carta de 13 de octubre de 1992 con la que acompañaba "copias de declaraciones, cheques, facturas y recibos por compra de equipo, materiales y otros documentos" con el propósito de que el Secretario de Justicia pudiese "conocer la totalidad de las circunstancias e información". Claramente, el Senador Silva no fue privado de notificación e información suficiente sobre la investigación en torno a las operaciones de su oficina en el Senado de Puerto Rico.

## VI

En fin, ninguna de las disposiciones citadas por el tribunal de instancia hace referencia al derecho del investigado a obtener el expediente investigativo. El recurrido *no* posee un derecho constitucional a tener acceso a la totalidad del expediente que tuvo ante sí el Panel cuando decidió designar un F.E.I. ni hay nada en la Ley del F.E.I. que

sugiera que el recurrido tuviese un derecho estatutario a más garantías procesales de las que recibió.

Por los fundamentos antes expuestos, *resolvemos que incidió el tribunal de instancia al interpretar el alcance de los derechos de los funcionarios investigados al amparo de la Ley del F.E.I. El validar dicha interpretación resultaría en un menoscabo de los propósitos del estatuto a los efectos de preservar la integridad de los funcionarios e instituciones públicas del Gobierno. Procede, por lo tanto, la revocación de la sentencia dictada por el foro de instancia y la desestimación del recurso de revisión instado ante dicho foro por el Senador Silva Iglecia.*

El Juez Asociado Señor Rebollo López disintió con opinión escrita. El Juez Asociado Señor Hernández Denton no intervino.

## — O —

Opinión disidente emitida por el Juez Asociado Señor Rebollo López.

Este Tribunal, al enfrentarse a una controversia de hechos cuya dilucidación entraña el establecimiento de una norma de derecho en nuestra jurisdicción, *viene en la obligación, entre otras, de resolver dicha controversia*: a la luz de la letra expresa de las disposiciones de ley pertinentes al caso; manteniendo presente los efectos, y consecuencias, que la implementación de dicha norma tendrá en el futuro en nuestra jurisdicción respecto a todas las personas que la misma afecta; y, sobre todo, evitando incurrir en el acomodaticio "error" de inferir una "intención legislativa", contraria a la letra expresa de la ley, con el propósito de poder pasar juicio sobre la actuación del legislador, descartar la misma, y poder así lograr que prevalezca el criterio personal de los integrantes de este Foro.

La decisión mayoritaria que se emite en el presente caso

—interpretativa de la Ley Núm. 2 de 23 de febrero de 1988, conocida como la "Ley del Fiscal Especial Independiente", 3 L.P.R.A. secs. 99h–99z— *es un ejemplo clásico de todo lo que un tribunal apelativo precisamente no debe hacer*; esto es, la misma resulta *violatoria* de todas las *sabias* directrices antes mencionadas. Bajo el *pretexto* de que la interpretación que de dicha ley hiciera el foro de instancia "no toma en consideración la naturaleza y los objetivos que tuvo el legislador al. crear el Panel y otorgarle a éste la facultad para designar un F.E.I." —opinión mayoritaria, pág. 830— *el Tribunal despoja a los funcionarios que dicha ley cobija de un derecho que el legislador expresamente le concede a éstos*; cual es, el de poder revisar o cuestionar, *de manera efectiva*, la "determinación administrativa de causa probable" que el Secretario de Justicia está facultado, por ley, para hacer en esta clase de situaciones.

En otras palabras, y utilizando como excusa una alegada e inexistente intención legislativa, la mayoría de los integrantes del Tribunal —foro que únicamente está facultado para pasar juicio sobre la validez, y no la sabiduría, de las leyes que aprueba el legislador— *nuevamente hace caso omiso del claro y expreso lenguaje de un estatuto e impone su personal y particular criterio sobre el de la Asamblea Legislativa de Puerto Rico*; requebrando, aún más, el fino balance que debe, y tiene que, existir entre las tres (3) Ramas de nuestro Gobierno.

I

Mediante la citada Ley Núm. 2 de 23 de febrero de 1988, el legislador creó no sólo el cargo de "fiscal especial independiente" sino que un procedimiento sui géneris para lidiar con la situación en que ciertos y determinados funcionarios públicos, *los cuales enumeró*,[1] fueran relacionados

---

[1] A saber:
"(a) El Gobernador;

o involucrados con la supuesta comisión de "cualquier delito grave y menos grave incluido en la misma transacción o evento y los delitos contra los derechos civiles, la función pública y el erario público".[2]

Conforme al *procedimiento especial* establecido, el Secretario de Justicia, luego de llevar a cabo "una investigación preliminar", *viene en la obligación de determinar*, "a base de la información disponible y los hechos alegados, *si existe causa suficiente para creer que se ha cometido* ... [por el funcionario involucrado] ... cualquier delito grave y menos grave incluido en la misma transacción o evento y los delitos contra los derechos civiles, la función pública y el erario público". (Énfasis suplido.)[3]

El Secretario de Justicia, *naturalmente,* puede concluir que existe, o que no existe, *causa suficiente* para creer que el funcionario involucrado cometió o no los delitos que se le imputan. Dicha determinación *administrativa* de causa probable, o de no causa, deberá ser informada por el Secretario al Panel sobre el Fiscal Especial;[4] debiendo el Secretario notificar, *adicionalmente,* su dictamen al respecto tanto al querellante que solicitó la investigación como al funcionario respecto al cual se solicitó la misma.[5]

Tanto el querellante, en caso de una determinación de

---

"(b) los Secretarios y Subsecretarios de Departamentos del Gobierno;

"(c) los jefes y subjefes de agencias;

"(d) los Directores Ejecutivos de las corporaciones públicas;

"(e) los Alcaldes;

"(f) los miembros de la Asamblea Legislativa de Puerto Rico;

"(g) los asesores y ayudantes del Gobernador;

"(h) jueces, y

"(i) todo individuo que haya ocupado cualesquiera de los cargos antes enumerados, a quien se le impute la comisión de cualquier delito grave y menos grave incluido en la misma transacción o evento y los delitos contra los derechos civiles, la función pública y el erario público, mientras ocupaba uno de los cargos enumerados, sujeto a que la designación del Fiscal Especial se haga dentro de los cuatro (4) años siguientes a la fecha en que dicho individuo cesó en su cargo." 3 L.P.R.A. sec. 99k(1).

[2] 3 L.P.R.A. sec. 99k(1).

[3] 3 L.P.R.A. sec. 99k(2).

[4] 3 L.P.R.A. sec. 99k(2).

[5] 3 L.P.R.A. sec. 99k(3).

no causa por el Secretario, como el funcionario involucrado, en caso de una determinación de "causa suficiente" de parte del Secretario, tendrán el término de quince (15) días para solicitar del citado Panel la revisión, según sea el caso, de la determinación del Secretario de Justicia de que se designe, o no, un "fiscal especial".[6]

*En el caso específico* en que el Secretario efectivamente determina que existe "causa suficiente" contra el funcionario querellado, *la citada Ley Núm. 2 de 1988 expresamente establece que el mencionado funcionario* "podrá solicitar al Panel ... que *revise y no confirme* la recomendación del Secretario de Justicia de que se designe un Fiscal Especial".[7] (Énfasis suplido.)

Ello cobra *singular importancia* en vista del hecho de que la decisión que finalmente haga el Panel a los efectos de que "*no* procede el nombramiento de un Fiscal Especial, ... *será final y firme y no podrá radicarse querella nuevamente por los mismos hechos*". (Énfasis suplido.)[8]

Por último, procede indicar que si el Panel llega a la decisión contraria, esto es, de que procede designar a un "fiscal especial", éste será el encargado de radicar, y sostener ante el foro judicial, las denuncias o acusaciones que en derecho procedan.[9]

## II

Una lectura de la opinión mayoritaria demuestra que son *tres* (3) los fundamentos que se aducen en la misma para sostener la *errónea* conclusión a los efectos de que el funcionario público involucrado en esta clase de situación *no* tiene derecho a examinar la evidencia, recopilada por el Secretario de Justicia en la etapa de la "investigación pre-

---

[6] 3 L.P.R.A. sec. 99k(5).

[7] 3 L.P.R.A. sec. 99k(5).

[8] 3 L.P.R.A. sec. 99k(5).

[9] 3 L.P.R.A. sec. 99k(3).

liminar", a base de la cual el Secretario le recomienda al Panel el nombramiento de un fiscal especial.

Aduce la mayoría, *en primer lugar*, que *no* surge "del historial legislativo ni de la exposición de motivos de la Ley del F.E.I. una intención legislativa de crear un mecanismo de descubrimiento de prueba que constituya un trato privilegiado o preferencial para los altos funcionarios del Gobierno que pueden ser objeto de unas investigaciones en su contra". Opinión mayoritaria, pág. 836.

En segundo término —y luego de señalar que, en casos comunes y corrientes, el "sumario fiscal" siempre ha sido considerado como "privado y secreto"— señala la mayoría que si esa "es la norma para todos los ciudadanos, ¿cómo los tribunales van a crear una norma distinta y más favorable para beneficiar a los funcionarios públicos investigados bajo la Ley del F.E.I., en ausencia de una intención legislativa a ese respecto"? (Énfasis suprimido.) Opinión mayoritaria, pág. 835.

Por último, expresa el Tribunal que permitirle ese descubrimiento al funcionario objeto de la investigación preliminar por parte del Secretario de Justicia "podría resultar en menoscabo de la investigación en curso" (Opinión mayoritaria, pág. 832), por razón de que, conforme la mayoría, el funcionario querellado podría coaccionar a los testigos potenciales y/o éstos podrían negarse a ofrecer información al saber que sus testimonios serán objeto de escrutinio por parte del funcionario querellado.

Los mencionados tres (3) fundamentos, dicho ello con el respeto y consideración que nos merecen nuestros compañeros Jueces, *constituyen la mejor evidencia de que la posición que asume la mayoría de los integrantes del Tribunal es una totalmente insostenible desde un punto de vista estrictamente jurídico.* Veamos.

# III

La figura del "fiscal especial independiente" advino a la atención pública, *en la esfera federal,* al comienzo de la década de los años setenta (70) en relación con el tristemente famoso "escándalo Watergate"; caso en que el nombramiento, y existencia, de dicho "fiscal especial independiente" estaba plenamente justificado por razón de que, como posteriormente se pudo comprobar, estaban directamente envueltos en el mismo figuras tales como el propio Presidente de Estados Unidos y el "Attorney General" de dicho País. Dicha situación particular, naturalmente, impedía que el Departamento de Justicia federal realizara la investigación en el caso; ello por la obvia razón de que nadie debe investigarse a sí mismo.

Esta situación desembocó en una serie de legislación —tanto en la esfera federal, estatal como local— que nos trae a la aprobación, por la Asamblea Legislativa de Puerto Rico en 1988, de la citada Ley Núm. 2. *No hay duda de que el propósito principal del legislador, al aprobar dicha Ley lo fue, y es, el evitar que funcionarios de alta jerarquía en el Gobierno ejerzan, de manera impropia, influencia sobre otros funcionarios del mismo gobierno en relación con investigaciones de índole criminal en que ellos puedan estar personalmente envueltos.*

Por otro lado, *tampoco debe haber duda alguna sobre el hecho de que el legislador, al aprobar la referida legislación, también estaba consciente de que estos funcionarios son particularmente vulnerables a ser objeto de imputaciones falsas, o fabricadas, de parte de ciudadanos a quienes no les agrada, o se sienten perjudicados por, las decisiones que éstos continuamente tienen que hacer en el desempeño de sus cargos.*

Definitivamente debido a los antes expresado es que el legislador, al aprobar la citada Ley Núm. 2, *de manera expresa insertó en la misma un esquema o procedimiento*

*administrativo, anterior a la designación oficial del "fiscal especial", que protege adicionalmente a dichos funcionarios de imputaciones o querellas infundadas.*

Dicho de la manera más sencilla, y con la esperanza de que otras mentes nos entiendan, *el legislador estableció —en relación con las querellas que se radican contra estos funcionarios— una especie de "cedazo o filtro" administrativo con el propósito de evitar que imputaciones inmeritorias logren acceso a la esfera judicial.*

Este "cedazo o filtro" administrativo se compone, como hemos visto, *de dos (2) etapas, a saber*: la primera, la "investigación preliminar" que realiza el Secretario de Justicia, la cual desemboca en una recomendación de éste al Panel sobre si existe, o no, "causa suficiente" para la designación de un "fiscal especial", y la segunda etapa, a nivel del Panel, en la cual dicho organismo tiene la facultad de confirmar, o revocar, la recomendación del Secretario de Justicia.

El legislador pudo haber "dejado las cosas ahí"; esto es, el procedimiento administrativo por él establecido no necesitaba, desde un punto de vista jurídico, ningún "ingrediente", o paso, adicional. *No* fue así; el legislador, como hemos visto, fue "más lejos".

Se estableció por la Asamblea Legislativa, *de manera expresa*, que en la situación en que el Secretario de Justicia determina que efectivamente existe "causa suficiente" para la designación de un "fiscal especial independiente", y así lo recomiende al Panel, *el funcionario querellado puede solicitar del Panel la revisión, y eventual revocación, de la referida determinación y/o recomendación del Secretario de Justicia.*

¿Cómo, *cabe preguntarse*, puede el funcionario querellado *revisar*, ante el Panel, la decisión del Secretario de Justicia, de que existe "causa suficiente" para la designación de un fiscal especial, *si ese funcionario desconoce to-*

*talmente la evidencia en que se basó el Secretario para hacer dicha determinación y/o recomendación?*

*En otras palabras,* ¿cómo puede el funcionario querellado demostrar ante el Panel que la evidencia en poder del Secretario no es confiable y/o no es suficiente en derecho *si el funcionario desconoce la misma?* Dicho de la manera más sencilla posible, *¿puede alguien refutar, controvertir, o defenderse de, lo que absolutamente desconoce?*

La contestación "salta a la vista y hiere la retina". *In re Roldán González*, 113 D.P.R. 238, 242 (1982). En vista del *expreso mandato legislativo*, concediéndole el *derecho* a ese funcionario a *revisar* la actuación del Secretario de Justicia, *de alguna forma y manera, que no perjudique de manera sustancial la investigación que se lleva a cabo, el foro judicial viene en la obligación de brindarle a ese funcionario un "mecanismo" con el propósito de que éste adquiera "conocimiento" respecto a la evidencia en que basó su determinación de "causa suficiente" el Secretario de Justicia.*[10]

Aquí *no* se trata, como expresa la mayoría de los integrantes del Tribunal, con la obvia intención de encubrir su errónea decisión, de que si el foro judicial acepta la tesis del demandante recurrido le estaría dando la espalda a los "fines u objetivos" que alegadamente tuvo el legislador al aprobar la citada Ley Núm. 2, que le estaría concediendo o reconociendo a éste "un trato privilegiado o preferencial", y de que estaríamos poniendo en peligro la investigación a ser realizada por razón de que los testigos podrían ser coaccionados.

De lo que *realmente* se trata y a lo que *llana y sencillamente* nos enfrentamos *es a un claro y expreso mandato*

---

[10] Nótese que, *distinto al caso del funcionario querellado*, en la situación en que el Secretario de Justicia determina que *no* existe causa suficiente para el nombramiento de un "fiscal especial", el ciudadano querellante —al ir en revisión de dicha determinación ante el Panel— *sí tiene conocimiento de la prueba que el Secretario de Justicia estimó "insuficiente"*; ello en vista de que ese querellante es el que produjo dicha prueba ante el Secretario.

*legislativo, la sabiduría del cual no tenemos la facultad para cuestionar.* Véase *P.I.P. v. C.E.E.,* 120 D.P.R. 580 (1988). La mayoría de los integrantes del Tribunal, *so color de una inexistente intención legislativa respecto a la naturaleza y objetivo de la citada Ley Núm. 2 y tratando de "equiparar" dos (2) procedimientos que son estatutariamente distintos,* hace caso omiso de ese mandato legislativo.

El legislador, *de manera clara y expresa,* concedió el *derecho de revisar* la determinación administrativa de causa probable que viene en la obligación de hacer el Secretario de Justicia en esta clase de casos. *Este Tribunal tiene la obligación de implementar ese mandato legislativo.* Reiteradamente hemos resuelto que, cuando el lenguaje del estatuto es claro y explícito, *no* cabe menospreciar la letra de la ley bajo el *pretexto* de cumplir con su espíritu. *Col. Int'l Sek P.R., Inc. v. Escribá,* 135 D.P.R. 647 (1994); *Torres v. Star Kist Caribe, Inc.,* 134 D.P.R. 1024 (1994); *Ferretería Matos, Inc. v. P.R. Tel. Co.,* 110 D.P.R. 153 (1980); *Román v. Superintendente de la Policía,* 93 D.P.R. 685 (1966).

Siendo esa la situación, se caen por su propio peso los dos (2) primeros argumentos de la mayoría a los efectos de que estamos ignorando la supuesta intención legislativa a la que dicha mayoría hace referencia y el de que no hay razón para concederle un trato diferente a estos funcionarios públicos, distinto el mismo al de los demás imputados de delito. *La contestación es sencilla: el legislador así lo entendió procedente.* En relación con este punto, es de notar que la ley federal al respecto —28 U.S.C. sec. 591 *et seq.*— la cual sirvió de "modelo" a la nuestra,[11] *no* contiene la disposición específica aquí en controversia. La inclusión por nuestro legislador, y existencia, de dicha disposición en la citada Ley Núm. 2, *constituye una clara expresión del mandato legislativo, el cual venimos obliga-*

---

[11] Véase Debate legislativo de la Cámara de Representantes sobre el P. del S. 931 de 29 de enero de 1988, 10ma Asamblea Legislativa, 4ta Sesión Ordinaria.

*dos a obedecer.* Sabido es, *repetimos*, que *no* podemos pasar juicio sobre la "sabiduría" de la actuación legislativa *ni* sustituir nuestro criterio, sobre cómo deben ser las cosas, por el del legislador; esto es, *únicamente* podemos emitir juicio sobre la *validez* del estatuto. *P.I.P. v. C.E.E.*, ante. En otras palabras, si el estatuto es válido, desde un punto de vista contitucional, *venimos en la obligación de ponerlo en vigor y aplicarlo.*

Por otro lado, y en relación con el tercero de los fundamentos que brinda la mayoría en apoyo de su errónea decisión —a los efectos de que permitirle un "descubrimiento de prueba" al funcionario querellado pone en riesgo la investigación por razón de que dicho funcionario puede "coaccionar" a los testigos y éstos pueden no declarar ante la expectativa de que su testimonio sea hecho público— realmente *no* tenemos mucho que decir; *esto es, el mismo definitivamente no necesita ser refutado, debido a lo inmeritorio que es.* De todas maneras, y por aquello de que siempre existe la posibilidad de que alguien pueda entender que dicho argumento es uno válido, basta con que se señale que el riesgo de que un acusado potencial ejerza presión indebida sobre un testigo *siempre* existe en *todas* las etapas del procedimiento. Por otro lado, la identidad de los testigos de cargo en una causa criminal *siempre* será conocida por el imputado de delito. *En fin*, dichos argumentos *no* sostienen la errada decisión que emite el Tribunal en el presente caso.

## IV

En resumen, y por las razones antes expresadas, *no* podemos refrendar con nuestro voto la decisión que emite el Tribunal en el presente caso. La misma constituye un ejemplo más de la errónea posición que predomina hoy día en el Tribunal; esto es, de que este Foro tiene la facultad para, a su antojo y capricho, derogar o enmendar judicial-

mente las leyes que aprueba la Asamblea Legislativa de Puerto Rico. Dicha actuación, sin embargo, *no* resulta impresionante; ello ha sucedido ya tantas veces que, desafortunadamente, el hecho de que ocurra de nuevo no causa mucho revuelo.

Lo que sí llama la atención de la decisión emitida en el día de hoy lo es el hecho de que se *priva* a un funcionario público, *cobijado por las disposiciones de la citada Ley Núm. 2 de 1988*, de revisar y cuestionar, de manera efectiva y a "nivel administrativo", la determinación realizada por el Secretario de Justicia a los efectos de que existe "causa suficiente" para designar un fiscal especial independiente en relación con los hechos que se le imputan a éste; *esto es, se le priva del derecho que estimó procedente concederle el legislador de defenderse, y poder demostrar su inocencia, ante el organismo administrativo que éste creó para lidiar con estas situaciones.*

Dicho de otra forma, con motivo de la decisión mayoritaria hoy emitida se *elimina* la posibilidad de que cualquier funcionario público, de los cobijados por la citada Ley Núm. 2, que en el futuro pueda verse envuelto en una situación similar, *y contra quien se haya radicado una querella inmeritoria*, pueda evitar que su nombre y reputación sean zarandeados públicamente como consecuencia de la celebración de un proceso criminal.

Esa situación, consecuencia directa e inescapable de la decisión mayoritaria hoy emitida, es lo que resulta ser verdaderamente importante e impresionante, *y ciertamente lamentable.*