# 2004 DTA 142

## TRIBUNAL DE CIRCUITO DE APELACIONES
## REGIÓN JUDICIAL DE SAN JUAN, PANEL II

JORGE INSERNI GARRASTAZÚ
Recurrente

v.

PANEL SOBRE EL FISCAL ESPECIAL INDEPENDIENTE
Recurrido

Núm. KLRA-2004-00592

San Juan, Puerto Rico, a 13 de septiembre de 2004

Panel integrado por su Presidenta, la Juez Bajandas Vélez,
la Juez Peñagarícano Soler y el Juez González Vargas

González Vargas, Juez Ponente

## TEXTO COMPLETO DE LA RESOLUCIÓN

Comparece ante este Foro Apelativo el señor Jorge Inserni Garrastazú (en adelante, Sr. Inserni), solicitando

la revisión de la Resolución del 1 de julio de 2004, emitida por Panel sobre el Fiscal Especial Independiente (en adelante, el Panel). En ella se acogió la recomendación de la entonces Secretaria de Justicia, Hon. Anabelle Rodríguez, a los efectos de que se nombrara un segundo Fiscal Especial Independiente (en adelante, F.E.I.) para que investigue la posible comisión de delitos por parte del recurrente, Sr. Inserni, mientras se desempeñaba como Presidente de la Corporación de Puerto Rico para la Difusión Pública (en adelante, W.I.P.R.). El Panel designó como F.E.I. a la Lcda. Ivette Aponte Nogueras, quien a esa fecha ya se desempeñaba como Fiscal Especial designada en un primer referido del Panel para investigar otros posibles delitos del Sr. Inserni en esa misma gestión como Presidente de la W.I.P.R.

## I
El recurrente, Sr. Inserni, fue nombrado en febrero de 1993 Presidente de la Junta de Directores de W.I.P.R. Éste estuvo ocupando dicho cargo hasta febrero de 2001, luego de ocurrido un cambio en la administración de Gobierno.

Por su parte, el Senado de Puerto Rico, mediante la Resolución 82 del 7 de febrero de 2001, creó la Comisión Especial para investigar la situación existente en la Corporación de Puerto Rico para la Difusión Pública. Mediante dicha Resolución se facultó a esta Comisión para investigar todo lo relacionado con la organización, recursos, contratación, operaciones generales y situación fiscal de W.I.P.R. Los hallazgos de la Comisión fueron recogidos en un informe presentado el 5 de abril de 2004 ante el Senado de Puerto Rico. A su vez, este informe fue referido a la Secretaria de Justicia con recomendaciones para la designación de un F.E.I., con el fin de que se investigaran posibles actos ilegales cometidos por el Sr. Inserni durante su incumbencia como Presidente de W.I.P.R.

Así las cosas, la Secretaria de Justicia realizó una investigación preliminar, que a su juicio apuntaba hacia posibles violaciones cometidas por el recurrente al Art. 4.11 de la Ley de Ética Gubernamental y el Art. 201 del Código Penal. Apoyada en lo anterior, la Secretaria de Justicia recomendó al Panel que designara un F.E.I. para investigar al Sr. Inserni.

Oportunamente, el Panel estudió el referido de la Secretaria de Justicia y acogió su recomendación. Conforme a ello, mediante Resolución del 23 de abril de 2004, designó a la Lic. Ivette Aponte Nogueras como F.E.I. para que investigara dichas alegaciones.

El 3 de junio de 2004, la Secretaria de Justicia, luego de la correspondiente investigación de una querella juramentada presentada por la Sra. Mabel Aponte Berríos, le cursó una segunda recomendación al Panel para que designara otro F.E.I., con el fin de investigar la posible violación a los Arts. 5.3.3 (b) y 4.11 de la Ley de Ética Gubernamental, por parte del Sr. Inserni. En esa misma fecha, la Secretaria de Justicia envió una carta al Sr. Inserni notificándole de tal acción. En dicha misiva se le advirtió, además, de su derecho a solicitar revisión ante el Panel del F.E.I. dentro de los 15 días siguientes.

A raíz de esta segunda notificación de investigación, el Sr. Inserni radicó una *Solicitud de Revisión* ante el referido Panel el 17 de junio de 2004, en la cual cuestionó la autoridad y jurisdicción de la Secretaria de Justicia para solicitar una segunda investigación sobre la misma persona y sobre los mismos hechos, con respecto a los cuales ya se había designado un F.E.I. Ello, especialmente cuando ambos referidos se originaban de la misma investigación del Senado. Luego de estudiado el Informe de la Secretaria de Justicia, así como los argumentos esbozados por el Sr. Iserni en la *Solicitud de Revisión*, el Panel emitió Resolución el 1 de julio de 2004 en la que determinó que existía base suficiente para investigar al recurrente por los delitos imputados. En vista de ello, designó como F.E.I. a la Lic. Aponte Nogueras, quien a esa fecha investigaba el primer referido al F.E.I., como ya se indicó.

Inconforme con el dictamen anterior, el recurrente acudió por derecho propio ante este Tribunal de

Apelaciones mediante recurso de Revisión Administrativa en el que levantó como primer y único señalamiento de error lo siguiente:

*"ERRÓ EL PANEL SOBRE EL FISCAL ESPECIAL INDEPENDIENTE, AL ACOGER LA RECOMENDACIÓN DE LA SECRETARIA DE JUSTICIA Y NOMBRAR UN NUEVO FEI, EN VIOLACIÓN DE MI DERECHO A UN DEBIDO PROCESO DE LEY."*

En su recurso, el Sr. Inserni, en síntesis, cuestionó la jurisdicción de la Secretaria de Justicia para hacer un segundo referido con imputaciones delictivas que surgían del mismo informe del Senado, con respecto al cual ya se había designado un F.E.I. Alegó que dicho referido y designación violan la Ley Núm. 2 del 23 de febrero de 1998, conocida como la Ley del Fiscal Especial Independiente (en adelante, Ley núm. 2) y lo exponen a una *"doble exposición"* y a una *"doble investigación"* por los mismos hechos. ■ Añadió que el Panel del F.E.I. debió concederle las garantías procesales de un debido proceso de ley al emitir su Resolución designando un F. E.I., incluyendo el derecho a vista y a un proceso adjudicativo, conforme a la Ley de Procedimiento Administrativo Uniforme. Alegó, además, que se estaba discriminando en su contra, por razón de ideas políticas y levantó adicionalmente a su favor la doctrina establecida en el caso, *E.L.A. v. Casta Developers, S.E.,* **2004 J.T.S. 82,** sobre procesos paralelos, entre otros señalamientos secundarios. A la luz de lo anterior, el Sr. Inserni solicitó, entre otras, que este Tribunal paralice los procedimientos investigativos en su contra, que deje sin efecto la nueva designación del F.E.I. y que se le permita acceso a la prueba que existe en su contra.

Entre tanto y posterior a la radicación del recurso de revisión administrativa, el 25 de agosto de 2004, el recurrente presentó ante este Foro una *Moción en Auxilio de Jurisdicción,* en la cual solicitó que se paralizara cualquier investigación en su contra dirigida por el F.E.I., hasta tanto se resuelva el recurso en los méritos.

Así las cosas, el 26 de agosto de 2004, este Tribunal dictó una Resolución en la que se le concedió un breve término a la parte recurrida para que expusiera su posición sobre la solicitud de auxilio de jurisdicción y el recurso en los méritos. Conforme a lo anterior y una vez concedida una prórroga que fue solicitada, el 1 de septiembre de 2004 comparecieron mediante escritos separados, el Panel del F.E.I. y la F.E.I., Ivette Aponte Nogueras. Según lo informado por el Panel mediante *Moción Urgente Informativa,* la notificación de su escrito a la parte recurrente fue devuelta debido a errores en la dirección a la que fue enviada. No obstante, mediante *Duplica Urgente a Mociones,* la parte recurrente informó haber obtenido copia del referido escrito del Panel a través de este Tribunal, y a la vez reaccionó al mismo en su escrito de Duplica presentado el 10 de septiembre de 2004.

Con el beneficio de las anteriores comparecencias, denegamos expedir el presente recurso de revisión administrativa. Veamos separadamente los diversos planteamientos traídos a nuestra atención por el Sr. Inserni en su Recurso.

## II

En su primer planteamiento, el recurrente cuestiona un segundo referido de investigación al F.E.I. en su contra por recomendación de la Secretaria de Justicia, cuando tal recomendación surge de la misma fuente que originó su primer referido el pasado 23 de abril de 2004. En esencia, alega el recurrente que ello plantea una especie de fraccionamiento de procesos y constituye un indebido envolvimiento de la Secretaria de Justicia en las funciones del F.E.I. en el curso de su primera investigación. Aduce, además, que dicha recomendación es innecesaria, en vista de las amplias facultades conferidas al F.E.I. en el referido anterior que abarcaba los posibles delitos alegados en el segundo referimiento. Plantea también violación al derecho que le protege contra la doble exposición o contra lo que él llama, la *"doble investigación".*

Los planteamientos anteriores no encuentran apoyo en la Ley sobre el Fiscal Especial Independiente ni en la Constitución de Puerto Rico o la de los Estados Unidos. El Art. 4 de la referida Ley Núm. 2, 3 L.P.R.A. § 99, le

encomienda al Secretario(a) de Justicia llevar a cabo una investigación preliminar de los casos cubiertos por esta Ley a base de la información jurada recibida y de entender que existe causa suficiente de que se ha cometido un delito, someterá su informe al Panel, con la recomendación de que se designe un F.E.I. No hay nada en la Ley que prohíba o limite la facultad del Secretario(a) de Justicia de hacer cuantas recomendaciones entienda justificable al Panel sobre la posible comisión de diversos delitos de un funcionario o exfuncionario público cubierto, independientemente de que ellos surjan de una misma fuente. Por supuesto, que es el deber del Departamento de Justicia emitir recomendaciones que no sean arbitrarias o caprichosas y que descansen en el resultado de una investigación preliminar, a tono con los criterios establecidos en el Art. 8 de la Ley Núm. 2, *supra*, 3 L.P.R.A. § 99. Aún así, le corresponderá al Panel examinar el informe del Departamento de Justicia y a la luz de su propia investigación y criterios decidir sobre la recomendación de Justicia. Ello constituye, además, una adecuada salvaguarda, capaz de subsanar cualquier desvío de los propósitos del Departamento de Justicia al formular sus recomendaciones.

En el presente caso, sin embargo, del examen de los autos no surge que la Secretaria de Justicia hubiera actuado de manera caprichosa al hacer el segundo referido que nos ocupa. Sostiene la parte recurrida, con apoyo en hechos incontrovertidos, que el primer referido de la Secretaria se produjo con premura, debido a la posible prescripción de los delitos incluidos en ese referido. Más tarde, con el beneficio de una investigación más profunda del voluminoso informe del Senado en el que descansó la Secretaria de Justicia para sus investigaciones preliminares, encontró base para hacer este segundo referido que nos ocupa. La justificación anterior, para no haber incluido en un mismo referimiento todos los posibles delitos cometidos por el señor Inserni en su desempeño como Presidente de la W.I.P.R., descarta de su faz intenciones caprichosas o arbitrarias por parte del Departamento de Justicia con respecto a este asunto.

Sin embargo, de no haber existido esa premura, nada hay en la ley que prohíba al Secretario de Justicia reexaminar los hechos, documentos o informes que dieron base a un primer referido al Panel del F.E.I. y a la luz de ese reexamen efectuar nuevos referimientos para que se investiguen otros posibles delitos detectados. Ello con mayor razón cuando se trata, como en el presente caso, de un abarcador y voluminoso informe, como se dijo anteriormente. Esta segunda recomendación de Justicia, al igual que la primera, fue objeto de una investigación y análisis independiente por parte del Panel, que lo componen tres distinguidos exjueces, con facultad en ley para declinar la recomendación del Departamento de Justicia e incluso con facultad para designar un F.E.I., aun en contra de la recomendación del Departamento. (Véase, 3 L.P.R.A § 99 r(b)) En el presente caso, el Panel del F.E.I. acogió la recomendación de la Secretaria de Justicia de entonces, por lo que se presume que encontró méritos en la misma. Ello, no obstante, el hecho de que su determinación de designar un F.E.I. es independiente de la investigación del Departamento de Justicia, como ya se señaló.

Debe tenerse presente, además, que tanto la investigación preliminar de la Secretaría de Justicia, como la designación de un F.E.I por parte del Panel, y la propia investigación realizada por el Fiscal Especial designado, consiste de un trámite de naturaleza investigativa. El mismo no compromete de ninguna manera los derechos constitucionales o procesales que pueda tener el investigado en el trámite judicial, en caso de que se radiquen cargos como resultado de esas investigaciones. Véase *Pueblo v. Navarro Alicea*, 138 D.P.R. 511 (1995); *Silva Iglecia v. Panel sobre el Fiscal Especial Independiente*, 137 D.P.R. 821 (1995).

Ello no significa, por supuesto, que en esta etapa investigativa, el funcionario esté privado de derechos o prerrogativas que le protejan. Sin embargo, tales garantías, por la naturaleza del proceso, son limitadas. Esencialmente, se le reconocen al investigado dos garantías procesales por mandato estatutario. Primero, el derecho del funcionario investigado de ser notificado de la recomendación formulada por el Departamento de Justicia al Panel, y segundo, su derecho a solicitar a dicho Panel en un término que no exceda de quince días, a partir de la notificación, que no acoja la recomendación de Justicia, y los fundamentos para ello.

Estas garantías le fueron concedidas al Sr. Inserni. Más aún, como expresó el Panel en su Resolución, éste

tomó en consideración al atender el referido de la Secretaria de Justicia los planteamientos levantados por el recurrente en su *Solicitud de Revisión* ante el Panel, de fecha 17 de junio de 2004. No hay, por tanto, en el récord de este caso base alguna para sostener la alegación de violación al debido proceso de ley que trae el Sr. Inserni.

Por otro lado, en esta etapa del proceso, el cual es uno investigativo, resulta prematuro cualquier planteamiento de doble exposición. Este se configura sólo al ser un acusado expuesto a ser procesado judicialmente más de una vez por un mismo delito. Art. II, Sec. 11 de la Constitución de Puerto Rico. Véase, *Pueblo v. Santiago* Pérez, **2003 J.T.S. 170**. En el presente caso, ni siquiera se han radicado cargos en el Tribunal bajo este segundo referido al F.E.I. Se trata de una defensa que, de proceder, debe ser levantada, una vez iniciado el encauzamiento criminal en el foro judicial. De otra parte, no existe en nuestro ordenamiento constitucional o procesal una prohibición a lo que el recurrente denomina la *"doble investigación"*.

El segundo planteamiento levantado por la parte recurrente en su Recurso, es igualmente inmeritorio. Igual o similar alegación se formuló en lo que denominamos el cuarto planteamiento. Ambos, en esencia, se refieren al reclamo de vista o el derecho a agotar algún tipo de proceso adjudicativo en relación con la recomendación del Departamento de Justicia. Ha sido claramente definido por el Tribunal Supremo de Puerto Rico el alcance de la garantía procesal contemplada en la Ley núm. 2, relativa al derecho del investigado de solicitar al Panel que no acoja la recomendación del Departamento de Justicia. Tal garantía no genera un reclamo a una vista administrativa, ni configura un procedimiento adjudicativo a favor del investigado. En el caso *Pueblo v. Navarro Alicea, supra,* el Tribunal Supremo se expresó sobre el particular como sigue:

*"No surge del historial legislativo ni de la Exposición de Motivos de la Ley del F.E.I. el intento o propósito de crear el derecho de apelar o de obtener la revisión formal de la recomendación del Secretario de Justicia, o de su negativa a recomendar, la designación de un F.E.I. No debemos olvidar que al interpretar una ley deben tomarse en consideración los propósitos que persigue de forma tal que no sea parte del fin y de la política pública por la cual fue creada. Silva Iglecia v. F.E.I, supra; Ind.Cortinera Inc. v. P.R. Telephone Co., 132 D.P.R. 654 (1993); Esso Standard Oil v. A.P.P.R,. 95 D.P.R. 772, 785 (1968). Todo cuando la ley concede al funcionario afectado por la recomendación del Secretario de Justicia, es el derecho a solicitar del Panel sobre el F.E.I. que rechace dicha recomendación exponiendo, naturalmente, las razones que a su juicio justifican tal curso de acción."*

Más adelante, añadió el Tribunal Supremo, en el referido caso, sobre el mismo asunto que:

*"[n]o estamos en este caso ante una vista administrativa sujeta a las normas procesales contemplada en la Ley de Procedimiento Administrativo Uniforme . . . Dicha ley claramente no aplica en los casos en que hayan 'funciones investigativas y de procesamiento criminal que realizan el Departamento de Justicia, el Negociado de Investigaciones Especiales y la Policía de Puerto Rico' . . . Por otro lado, la Ley del F.E.I no exige procedimientos, ni determinaciones detalladas sobre la determinación o no de un F.E.I., ni tampoco la celebración de vistas administrativas del Panel sobre el F.E.I., a los fines de recibir evidencia. . .".*

El razonamiento del Tribunal Supremo en la doctrina sentada en el citado caso de *Pueblo v. Navarro Alicea, supra,* se expresa en los siguientes términos:

*". . . no podemos concebir una interpretación que pretenda conceder a los 'altos funcionarios del gobierno' derechos adicionales a los que disfruta un ciudadano común y corriente en los procesos criminales ordinarios. Conforme al procedimiento criminal ordinario, a nadie se le ocurriría postular que un ciudadano tiene derecho a presentar una solicitud de revisión ante el Secretario de Justicia para impugnar su determinación de iniciar una investigación criminal en contra del primero, previa la concesión de una vista plenaria a los fines de que el ciudadano pueda descubrir la evidencia en su contra, impugnar la misma y/o*

*presentar prueba en su defensa."*

Cabe destacar que el referido caso de *Pueblo v. Navarro Alicea*, también atiende el señalamiento en cuanto al reclamo de que se formulen determinaciones de hechos y conclusiones de derecho. En la medida que no se trata de un proceso adjudicativo propiamente, ni se requiere la celebración de vista, tampoco procede hacer determinaciones de hechos. Ello es sólo necesario en el contexto de un proceso adjudicativo.

Lo anteriormente citado hace innecesario cualquier comentario adicional sobre este asunto.

En el siguiente planteamiento, el Sr. Inserni alega que la investigación preliminar del Departamento de Justicia descansó en el testimonio de la Sra. Mabel Aponte Berríos, quien, según éste, mintió al prestar testimonio ante la Comisión Legislativa que investigó las transacciones del señor Inserni. Éste cita, en apoyo de su contención, el Informe de la minoría del Partido Nuevo Progresista en la referida Comisión Legislativa, en la que se describe a la señora Aponte Berríos como mendaz en su testimonio ante la Comisión. Indica el recurrente, además, en relación con este extremo que por haber declarado la señora Aponte Berríos bajo inmunidad, la Secretaría de Justicia estaba impedida de basar en su testimonio la recomendación formulada al Panel.

En primer lugar, la credibilidad de ésta y cualquier otro testigo es un asunto a ser dirimido y adjudicado por el tribunal de primera instancia al aquilatar la prueba ante sí y conferir el valor probatorio que esos testimonios puedan tener en el trámite judicial, de presentarse cargos contra el recurrente. No le corresponde al Departamento de Justicia, ni tampoco al Panel al hacer su referido, adjudicar concluyentemente la credibilidad de los testigos, lo cual implicaría que se siga para ello un proceso adjudicativo. Por supuesto, que el Departamento de Justicia al hacer su investigación, así como el Panel al llevar a cabo su evaluación de ese referido, deben prestar atención a la calidad de la prueba que tienen ante sí al hacer su determinación de si procede o no la designación de un F.E.I. Igual evaluación debe hacer el F.E.I. al decidir si procede o no con la radicación de cargos ante los tribunales. Se descansa en que, tanto el Departamento de Justicia, como el Panel y el propio F.E.I. designado al decidir formular cargos al funcionario investigado, ha conferido preliminarmente credibilidad a la prueba que habrá de llevar a la consideración del Tribunal. Sin embargo, reiteramos que este asunto, en última instancia y de manera final, corresponde dirimirlo al tribunal de primera instancia al adjudicar el caso ante su consideración.

En la etapa que se encuentra este caso pueden surgir diferentes opiniones en cuanto a la calidad del testimonio de la señora Aponte Berríos. No es propio que en estos momentos este Tribunal intervenga con el juicio, primero de la Secretaria de Justicia al investigar preliminarmente el caso, ni con la evaluación que sobre el particular realizó el Panel del F.E.I. al hacer la suya propia. Tampoco nos corresponde escudriñar las estrategias, ni la utilidad que pueda o no adscribirle a dicho testimonio el F.E.I. designado al hacer su determinación sobre si procede o no con la radicación de cargos contra el señor Inserni, ya sea con ésta o cualquier otra prueba.

Más aún, desconocemos en esta etapa qué otra prueba, si alguna, tomó en consideración la Secretaria de Justicia al hacer su recomendación y el Panel al designar al F.E.I. a cargo de investigar el presente caso. Tampoco conocemos la totalidad de la prueba que pueda o no recopilar el F.E.I. al hacer su investigación. De igual manera ignoramos cuán relevante pudo resultar en esa evaluación o investigación el testimonio de la señora Aponte Berríos. Todos estos serán aspectos apropiados para juzgarse con el rigor de un proceso adjudicativo ante el tribunal de primera instancia de radicarse cargos contra el Sr. Inserni.

En cuanto al planteamiento sobre la inmunidad de la Sra. Aponte Berríos, surge del expediente y del propio recurso del recurrente que quien otorgó inmunidad a la señora Aponte Berríos fue el Senado de Puerto Rico en el proceso de investigación legislativa. La Secretaria de Justicia recibió el informe de la Comisión con sus

anejos, el cual comprende el testimonio de la señora Aponte Berríos. También recibió una querella jurada de esta testigo. Se desconoce el trámite específico seguido por el Departamento de Justicia en la evaluación de ese Informe y de la querella presentada, así como de cualquier otra gestión realizada en el proceso de esta investigación. No surge del expediente ante nuestra consideración acuerdos de inmunidad entre el Departamento de Justicia y la señora Aponte Berríos, más allá de los acuerdos con la Comisión Investigativa del Senado de Puerto Rico. Nuevamente, el recurrente, en su día, estará en posición de levantar ese asunto en el Foro Judicial, luego de agotar el descubrimiento de prueba apropiado, si a su juicio entiende que la inmunidad concedida a la Sra. Aponte Berríos impide el uso de su testimonio en ese proceso.

En su quinto planteamiento, aduce el recurrente que viola su debido proceso de ley el hecho de que se utilice en la investigación del Departamento de Justicia y en la del Panel su propio testimonio ante la Comisión, el cual virtió bajo la presión de que podía ser encarcelado si no declaraba. Alega, además, que tampoco se le advirtió adecuadamente de su derecho a la no autoincriminación. El planteamiento es tardío en un extremo y prematuro en otro. Correspondió y corresponderá, si así lo estima procedente el recurrente, ser ponderado en otras etapas fuera del proceso ante nuestra consideración. El alcance de la orden judicial obligándole a declarar, las consecuencias de no hacerlo y los remedios disponibles, incluyendo el ejercicio de su derecho a la no autoincriminación, debió ser objeto de consideración en dicho trámite, para el cual el recurrente contaba con remedios, incluso de revisión apelativa.

Debe tenerse presente, además, que el derecho a la autoincriminación, además de su protección constitucional, está regulado por la Ley Núm. 27 del 8 de diciembre de 1990, 1 L.P.R.A, secs. 591 y siguientes. Esta cubre el procedimiento y concesión de inmunidad a testigos, aplicable también a los procesos legislativos. Sus remedios estaban, por tanto, disponibles para el Sr. Inserni en ese momento. Sobre el particular expresó el Prof. Ernesto Chiesa, en su obra Derecho procesal de Puerto Rico y Estados Unidos, ▮ que *"[e]l privilegio contra la autoincriminación puede ser invocado en todo tipo de procedimiento gubernamental, sea civil, criminal, administrativo o legislativo."* Véase, además, *Lefkousitz v. Turley*, 414 U.S. 70 (1973).

Por otra parte, de procederse a la radicación de cargos en el tribunal y de ser relevante en ese proceso el testimonio prestado ante la Comisión Legislativa, corresponderá entonces levantarse el planteamiento en ese momento, de manera que pueda el tribunal en su día determinar la admisibilidad o no de esa prueba y el rol que ese testimonio pueda tener en la adjudicación del caso. No correspondía, sin embargo, dirimirlo a la Secretaria de Justicia o el Panel del F.E.I. al realizar sus respectivas investigaciones. Más aún, en esta etapa desconoce igualmente este Tribunal el papel que desempeñó, si alguno, el testimonio prestado por el Sr. Inserni en la Comisión Legislativa para fines del proceso de investigación preliminar del Departamento de Justicia y del Panel.

En lo referente al planteamiento sexto, en el cual se alega violación al debido proceso de ley, a la luz de la doctrina del caso *E.L.A. v. Casta Developers, supra*, sobre los procesos investigativos paralelos, tampoco le asiste la razón al recurrente. Recientemente, tuvimos la oportunidad en este Tribunal de analizar el alcance o aplicabilidad de la doctrina de *E.L.A. v. Casta Developers, supra*, a los procesos legislativos. Véase, *Hon. Antonio Fas Alzamora, Presidente del Senado de Puerto Rico, Ex Parte*, KLCE-2004-00906, de fecha 12 de julio de 2004. En dicho caso expresamos lo siguiente:

*"Es evidente que los procesos paralelos exhiben sus mayores males o peligros en procedimientos dentro de agencias del Ejecutivo o promovidos por éstas, principalmente por algunas subdivisiones del Departamento de Justicia. Téngase presente, además, que le corresponde precisamente al Departamento de Justicia representar legalmente a esas agencias.*

*Ese rol preponderante de la entidad promovente del encausamiento criminal no está presente en la Rama Legislativa, que es una rama de gobierno independiente y autónoma. Por supuesto, que es dable que puedan*

*establecerse relaciones de cooperación o de intercambio de información entre la legislatura y el Departamento de Justicia, como puede producirse entre el Departamento de Justicia con entidades o agencias federales, particularmente la Fiscalía Federal, la Oficina del Contralor, la Oficina de Ética Gubernamental, entre otras. No puede descansarse, sin embargo, en esa probabilidad para, por ello, intervenir con el descargo de las funciones o atributos de otra rama de gobierno, como se plantea en el presente caso.*

*Resulta, además, pertinente destacar el hecho de lo impráctico e impropio que resulta imponerle a la Asamblea Legislativa la carga de ofrecer datos o información que no están bajo su control. No es prerrogativa de la Asamblea Legislativa decidir, ni siquiera necesariamente conocer sobre investigaciones o procesos criminales. De igual manera, se espera que en los trabajos de las comisiones legislativas el Departamento de Justicia ni ninguna otra agencia del Ejecutivo tenga inherencia directa o determine el curso de sus investigaciones. Por las consideraciones anteriores, resulta oneroso para la gestión legislativa subyugar o atar el curso de sus procesos y trabajos a las actuaciones o determinaciones de una entidad adscrita a otra rama del gobierno. Tal exigencia atentaría contra la doctrina de separación de poderes, en la medida que real o potencialmente sujeta o subordina el ejercicio de los poderes legislativos a decisiones o procesos de otras ramas independientes y autónomas. Lo anterior resulta claramente inaceptable."*

A base de las consideraciones ampliamente ponderadas en el referido caso de *Hon. Antonio Fas Alzamora, supra,* concluimos en el mismo y reafirmamos ahora que la doctrina del caso *Casta Developers, Inc, supra,* es inaplicable a los procesos legislativos. No puede, en consecuencia, plantear el Sr. Inserni que la conducción de la investigación legislativa relacionada con sus ejecutorias en la W.I.P.R., ni su posterior uso en cuanto a las acciones tomadas por el Departamento de Justicia, violaran su derecho al debido proceso de ley, según ese derecho se enmarca en la doctrina de *Casta Developers, supra,* sobre los procesos paralelos.

En lo concerniente a los señalamientos 7 y 8, ambos se refieren a lo que el Sr. Inserni describe como discrimen o persecución política, o persecución selectiva en su contra. Tal planteamiento consiste de generalidades. No surge del expediente del caso evidencia o hechos específicos que permitan a este Tribunal concluir o apreciar un propósito realmente de persecución política o selectiva por parte del Departamento de Justicia o del Panel al producir los referidos del Sr. Inserni al F.E.I. En efecto, nuestro ordenamiento constitucional reconoce como defensa afirmativa el procesamiento criminal selectivo. No obstante, ella deberá presentarse, alegarse y probarse por el imputado en el foro de instancia. Véase, *Pueblo v. Rexach Benítez,* 130 D.P.R. 273 (1992*),* particularmente la Opinión Concurrente y de Conformidad del Juez Asociado Hernández Denton.

El Departamento tuvo ante sí un voluminoso informe del Senado de Puerto Rico que aportaba suficientes criterios y evidencia sobre la posible comisión de delitos por parte del Sr. Inserni. Además, el Senado de Puerto Rico formuló recomendaciones específicas a la Secretaria de Justicia sobre la designación de un F.E.I. En el segundo referido medió incluso una querella juramentada de una testigo de los hechos investigados. El Departamento de Justicia tenía la obligación de investigar los hechos o eventos sometidos a su consideración por el Senado, así como la querella antes mencionada. No haberlo hecho en tales circunstancias, hubiera constituido una clara negligencia por parte del Departamento de Justicia en el cumplimiento de sus funciones ministeriales.

En lo concerniente al último planteamiento levantado por el Sr. Inserni, éste es igualmente inmeritorio. En éste se cuestiona la determinación del Departamento de Justicia o del Panel de referir el asunto al trámite criminal y no a otras alternativas de naturaleza civil o administrativa. El planteamiento no amerita una elaborada respuesta. A este Tribunal no le corresponde intervenir en el ámbito de la discreción administrativa de la agencia en el descargo de sus funciones o atributos, siempre que ellas estén autorizadas por ley y no sean arbitrarias o caprichosas. *Pérez Vélez v. VPH Motors Corp,* **2000 J.T.S. 177,** (2000). En el presente caso, las acciones tomadas por el Departamento de Justicia y el Panel están claramente apoyadas en sus respectivos

estatutos. Además, conforme a lo señalado en cuanto a otros planteamientos, tales prerrogativas no se han ejecutado de manera selectiva o discriminatoria contra el Sr. Inserni. En vista de ello, no nos corresponde pasar juicio sobre si debió o no optarse por uno u otro tipo de proceso, puesto que ello está fuera del ámbito de nuestra jurisdicción.

Por último, es menester reiterar que el presente proceso es uno investigativo. En esta etapa de los procesos, los derechos que le asisten al investigado son limitados. Debe, sin embargo, tener presente la parte recurrente que, de procederse a la radicación de cargos e iniciarse el procesamiento criminal por la vía judicial en su contra, a éste le ampararían todos los derechos y prerrogativas constitucionales y procesales que nuestro ordenamiento criminal reconoce. Es bajo el palio de ese proceso que le corresponde al recurrente levantar las defensas y planteamientos traídos a destiempo ante nuestra consideración en el presente Recurso.

A la luz de las consideraciones antes expuestas, no vemos méritos en el pedido del Sr. Inserni en su Moción sobre Auxilio de Jurisdicción para paralizar los procesos seguidos en su contra por la Oficina del F.E.I. Tampoco entendemos procedente por falta de méritos, expedir el recurso de revisión administrativa presentado. En vista de ello, se declara no ha lugar la *Moción en Auxilio de Jurisdicción* y se deniega expedir el recurso de revisión administrativa sometido por la parte recurrente.

Notifíquese inmediatamente a las partes por teléfono o telefax y por la vía ordinaria.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal.

Aida Ileana Oquendo Graulau
Secretaria General

**ESCOLIOS 2004 DTA 142**

**1.** Véase págs. 5 y 10 del recurso de Revisión Administrativa.

**2.** Conforme al caso de *En el Asunto de la Investigación en Torno a Juan M. Cruzado Laureano, Ex Alcalde de Vega Alta,* **2003 J.T.S. 18** (2003), se resolvió que en circunstancias apropiadas no era estrictamente necesario que la información recibida fuera jurada.

**3.** El mismo se componía de más de 2,000 anejos producto de la investigación de la Comisión Especial del Senado que investigó las operaciones de la W.I.P.R. que se prolongó por unos tres años.

**4.** Vol. 1, § 32, pág. 119 (Forum 1991).