Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| ORLANDO JOSÉ APONTE ROSARIO<br><br>Apelante<br><br>v.<br><br>OFICINA DEL PANEL SOBRE EL FISCAL ESPECIAL INDEPENDIENTE<br><br>Apelado | TA2025AP00621 | Apelación procedente del Tribunal de Primera Instancia, Sala de Comerío<br><br>Civil núm.: BQ2025CV00114<br><br>Sobre:<br>Recurso Especial de Revisión Judicial para el Acceso a Información, Ley 141 de 2019 |

Panel integrado por su presidente, el juez Sánchez Ramos, la jueza Romero García y el juez Pérez Ocasio.

Sánchez Ramos, juez ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 23 de enero de 2026.

Por las alegaciones, el Tribunal de Primera Instancia ("TPI") denegó de plano un recurso especial en solicitud de ciertos documentos y expedientes del Panel sobre el Fiscal Especial Independiente (el "Panel" o "OPFEI") relacionados con un proceso penal ya culminado. Según se explica en detalle a continuación, concluimos que erró el TPI al así actuar pues, como cuestión de derecho, solo estaría protegida aquella parte de los documentos cuya divulgación sea contraria a la ley, por lo cual es necesario que el TPI primero reciba prueba y examine el contenido de la información solicitada para determinar qué porción, si alguna, no tiene que ser divulgada.

I.

En agosto de 2025, el Sr. Orlando José Aponte Rosario (el "Peticionario" o "Demandante") presentó la acción de referencia, sobre *Recurso Especial de Revisión Judicial para el Acceso a Información Pública* (el "Recurso"), al amparo del procedimiento

expedito que provee la Ley 141-2019, Ley de Transparencia y Procedimiento Expedito para el Acceso a la Información Pública, según enmendada, 3 LPRA sec. 9911 *et seq.* ("Ley 141" o "Ley de Acceso").

El Recurso se presentó en contra del Panel; se solicitó información relacionada con el procesamiento penal del Peticionario.[1] Se adujo que, al no haber una investigación pendiente y no referirse a expedientes de personal, los documentos solicitados no eran de "carácter confidencial".[2]

Al cabo de algunos incidentes procesales, el 4 de septiembre, la OPFEI instó una *Moción en Cumplimiento de Orden y Solicitud de*

---

[1] Mientras el Peticionario era legislador, su entonces esposa, la Sa. Elizabeth Torres Alvarado, presentó una querella en su contra por violencia doméstica e infracción a la Ley de Armas. Una vez realizada la investigación preliminar de rigor, el Departamento de Justicia refirió el Informe a la OPFEI. Subsecuentemente, la OPFEI encausó al Peticionario por infracción a los artículos 3.2.(c), 3.2(d) y 3.5(a) de Ley 54-1989 y el artículo 6.14 de la Ley de Armas. Luego de un juicio sin jurado, el 6 de marzo de 2025, el Peticionario fue declarado "No culpable", con lo cual culminó, de forma definitiva, dicho proceso.

[2] El Peticionario solicitó al Panel que se le entregara copia de los siguientes documentos en un término de no más de diez (10) días:
   1) copia del informe final, que contendrá una descripción completa y detallada de todas las gestiones realizadas en relación al (sic) caso (DI-FEI-2023-0030), con cualquier anejo.
   2) copia de todos los informes parciales, cartas, memorandos o documentos preparados por los fiscales asignados al caso contra Orlando J. Aponte Rosario, que formen parte del expediente, con sus anejos.
   3) copia de todos los requerimientos de información y documentos, preparados por los investigadores o fiscales especiales, que surjan del expediente relacionados al caso antes mencionado y sus contestaciones correspondientes.
   4) copia de todas las facturas de los abogados contratados, profesionales, peritos o servicios, relacionadas a la investigación y procesamiento del caso del exrepresentante Orlando Aponte Rosario.
   5) copia de todos los cheques, pagos o desembolsos realizados por la Oficina del Panel sobre el Fiscal Especial Independiente, en relación a (sic) la investigación y procesamiento del caso antes indicado.
   6) copia del cualquier referido al PFEI y/o comunicación escrita, con cualquier documento que haya sido acompañado, en relación al (sic) expediente del caso antes mencionado.
   7) copia de cualquier comunicación escrita, moción, petición, solicitud, requerimiento y/o subpoena que haya sido preparado con relación al caso antes indicado, con cualquier contestación correspondiente.
   8) copia de cualquier informe pericial que haya sido preparado y/o (sic) obtenido por el fiscal especial, en relación al (sic) caso de Orlando Aponte.
   9) copia del expediente completo que obra en custodia de la Oficina sobre el Fiscal Especial Independiente, en relación a (sic) la investigación y procesamiento del Sr. Orlando Aponte Rosario.
   10) cualquiera otros (sic) documentos y/o (sic) información que esté en poder, posesión y/o (sic) custodia de la OPFEI, que esté relacionado con la investigación y procesamiento contra el Sr. Orlando Aponte Rosario, que culminó en su exoneración y absolución judicial el 6 de marzo de 2025.
Véase, *copia correo electrónico del 7 de julio de 2025*, Anejo 2 del Recurso, Entrada 1 de SUMAC.

*Desestimación.* La OPFEI destacó que el Peticionario remitió la solicitud de información a la secretaria de la OPFEI, quien no ha sido designada Oficial de Información. Luego de determinar que el Peticionario no siguió el procedimiento establecido por ley, la OPFEI indicó que denegó su solicitud de información y le orientó en cuanto al procedimiento correcto para tramitar la solicitud de información.

El Panel añadió que, como preámbulo a la solicitud de información, se requiere que esta sea, en efecto, de naturaleza pública. La OPFEI planteó que el derecho al acceso a la información pública no es absoluto y cede en situaciones de imperativo interés público. Resaltó que el Artículo 4 de la Ley Núm. 122 de 1 de agosto de 2019, Ley de Datos Abiertos del Gobierno de Puerto Rico, según enmendada, 3 LPRA sec. 9894, establece varios criterios aplicables a planteamientos de confidencialidad o privilegios para evitar la divulgación de datos, así como varias excepciones a la divulgación de datos públicos.

Asimismo, el Panel sostuvo que el sumario fiscal y el producto del trabajo (work product) de los abogados están protegidos por el privilegio abogado cliente y el privilegio de información oficial, según codificado en las Reglas 503 y 514 de Evidencia, 32 LPRA Ap. VI, R. 503 y R. 514. Además, arguyó que el Artículo 17 de la Ley Núm. 2 de 23 de febrero de 1988, según enmendada, Ley de la Oficina del Panel sobre el Fiscal Especial Independiente ("Ley del FEI"), 3 LPRA sec. 99w, establece la confidencialidad del proceso investigativo. La OPFEI sostuvo que los Fiscales Especiales Independientes tienen el deber de no divulgar información que se les someta y de prohibir el acceso público a los procedimientos que allí se ventilen.

De igual modo, la OPFEI hizo referencia a que el Artículo 13 de la Ley Núm. 205-2004, Ley Orgánica del Departamento de Justicia, según enmendada, 3 LPRA sec. 292j, establece que la información obtenida como resultado de una investigación realizada

es confidencial. Una vez concluida la investigación, la información puede ser divulgada de conformidad con las normas que adopte el Departamento de Justicia, excepto cuando: (a) una ley o reglamento declare la confidencialidad de la información; (b) se revele información que pueda lesionar derechos fundamentales de terceros; (c) la comunicación esté protegida por alguno de los privilegios evidenciarios que pueden invocar los ciudadanos; (d) se trate de la identidad de un confidente; (e) sea información oficial conforme a las Reglas de Evidencia; (f) se revelen técnicas o procedimientos. Art. 13 de la Ley 205-2004, *supra*.

Por último, la OPFEI aseveró que no tenía reparo en entregarle al Peticionario copia del Informe Final rendido por los fiscales a cargo de la investigación, el cual constaba de seis (6) páginas y dos (2) anejos.

El 14 de septiembre, el Peticionario se opuso a la moción del Panel; el 16 de septiembre, la OPFEI replicó.

El 30 de septiembre el TPI notificó una *Sentencia* (la "Sentencia"), mediante la cual denegó el Recurso, con excepción del informe final que el Panel se allanó a entregar. El TPI consideró que varios de los incisos de la solicitud del Peticionario eran demasiado amplios y no específicos. El TPI observó que parte de lo solicitado debió serle entregado al Peticionario como parte del descubrimiento de prueba en el proceso penal. Aseveró que parte de la información solicitada era el producto de trabajo de los abogados o parte del sumario fiscal y, por ende, de naturaleza confidencial. El TPI también razonó que, en atención al imperativo interés público que tienen los casos de violencia de género, el derecho al acceso a la información pública debía ceder ante la protección a la confidencialidad y el derecho a la intimidad que tienen los procesos de violencia de género. Por último, el TPI puntualizó que, en el caso de las facturas de los abogados y otros profesionales, peritos o

servicios, relacionadas con la investigación y procesamiento criminal del Peticionario, existía información protegida por el privilegio abogado-cliente, perteneciente o relacionada con el sumario fiscal, y que podría revelar técnicas o procedimientos de investigación, razón por la cual concluyó que era confidencial. Además, indicó que la información de los contratos de la OPFEI está disponible en la Oficina del Contralor de Puerto Rico.

El 15 de octubre, el Peticionario solicitó la reconsideración de la Sentencia; enfatizó que, además del informe final de los fiscales, debía recibir copia de los informes parciales que mensualmente los Fiscales Especiales le entregan al PFEI, así como el informe preliminar del Departamento de Justicia. El TPI denegó la referida moción de reconsideración mediante una Resolución notificada el 28 de octubre.

En desacuerdo, el 1 de diciembre,[3] el Peticionario interpuso el recurso de referencia; formula los siguientes señalamientos de error:

> PRIMER ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL HABER DECLARADO NO HA LUGAR EL RECURSO DE REVISIÓN JUDICIAL PARA EL ACCESO A INFORMACIÓN [LEY 141-2019].

> SEGUNDO ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL CONCLUIR QUE EXISTE MUCHA INFORMACION EN EL EXPEDIENTE DEL PFEI, QUE DE SER REVELADA, IMPLICARIA NECESARIAMENTE DEJAR AL DESCUBIERTO LOS OBJETIVOS, MÉTODOS O TÉCNICAS INVESTIGATIVAS ESPECIALES, <u>SIN HABER EXAMINADO LA INFORMACIÓN O DOCUMENTOS DEL EXPEDIENTE DE PFEI</u>.

> TERCER ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL CONCLUIR QUE NO PROCEDE LA ENTREGA DE LA INFORMACION Y DOCUMENTOS SOLICITADOS EN EL INCISO (2) DE LA PETICION DE INFORMACION, "SOBRE INFORMES PRELIMINARES Y DEMÁS INFORMACIÓN, PORQUE EVIDENTEMENTE SE REFIERE A INFORMACIÓN DEL SUMARIO FISCAL QUE CONTIENE EL PRODUCTO DE LA LABOR DE ABOGADOS."

---

[3] El 1 de diciembre fue el primer día laborable luego del miércoles 26 de noviembre.

CUARTO ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL CONCLUIR QUE NO PROCEDE LA ENTREGA DE LA INFORMACIÓN Y DOCUMENTOS SOLICITADOS EN LOS INCISOS (3), (7), (9) Y (10) DE LA PETICIÓN DE INFORMACIÓN, POR TRATARSE DEL "WORK PRODUCT" DE LOS ABOGADOS CONTRATADOS POR EL PFEI, CONFORME A LA REGLA 505 (A) (2) DE LAS DE EVIDENCIA.

QUINTO ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL CONCLUIR QUE NO PROCEDE LA ENTREGA DE LA INFORMACIÓN Y DOCUMENTOS SOLICITADOS EN LOS INCISOS (6) Y (8) DE LA PETICION DE INFORMACION CONCLUYENDO QUE "LA INFORMACIÓN A LA QUE TENÍA DERECHO EL RECURRENTE COMO PARTE DE SU DEBIDO PROCESO DE LEY, DEBIÓ HABERLA INSTRUMENTADO COMO PARTE DE LA REGLA 95 DE LAS DE PROCEDIMIENTO CRIMINAL."

SEXTO ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL CONCLUIR QUE NO PROCEDE LA ENTREGA DE LA INFORMACIÓN Y DOCUMENTOS SOLICITADOS EN LOS INCISOS (4) Y (5) DE LA PETICION DE INFORMACION AL CONCLUIR QUE "DICHOS DOCUMENTOS DE FACTURAS Y OTROS RELACIONADOS, EXISTE INFORMACIÓN PROTEGIDA POR EL PRIVILEGIO ABOGADO CLIENTE CON RELACIÓN A LAS GESTIONES REALIZADAS. (Subrayado en el original).

El 5 de enero, la OPFEI presentó su alegato en oposición. Resolvemos.

II.

"En nuestro ordenamiento existe un derecho fundamental al acceso a información pública." *Kilómetro 0, Inc. v. Pesquera López*, 207 DPR 200, 207 (2021), citando a Art. II, Sec. 4, Const. ELA, LPRA, Tomo 1; *Trans Ad de P.R. v. Junta de Subastas*, 174 DPR 56, 67 (2008); *Ortiz v. Dir. Adm. de los Tribunales*, 152 DPR 161, 175 (2000); *Soto v. Srio. De Justicia*, 112 DPR 477, 485-486 (1982).[4] Así pues, el acceso a la información pública constituye un pilar fundamental en toda sociedad democrática. *Bhatia Gautier v. Gobernador,* 199 DPR 59, 80 (2017).

---

[4] Este imperativo constitucional también ha sido ratificado por la vía legislativa, mediante el Artículo 409 del Código de Enjuiciamiento Civil de Puerto Rico, 32 LPRA sec. 1781.

Este derecho garantiza que toda persona pueda examinar el contenido de los expedientes, informes y documentos que hayan sido recopilados por el Estado durante sus gestiones gubernamentales. *Kilómetro 0, Inc.*, *supra*, citando a *Ortiz, supra.* Ello porque, "[s]in conocimiento de hechos no se puede juzgar; tampoco se puede exigir remedios a los agravios gubernamentales mediante los procedimientos judiciales o a través del proceso de las urnas cada cuatro (4) años". *Soto*, 112 DPR a la pág. 485. Su importancia radica en la noción de que el conocimiento de las gestiones públicas facilita la libre discusión de los asuntos gubernamentales y, por ende, el ejercicio pleno de la libre expresión. *Kilómetro 0, Inc.*, 207 DPR a la pág. 208, citando a *Colón Cabrera v. Caribbean Petroleum*, 170 DPR 582, 590 (2007). Sin acceso a información pública, se "contravendría[n] nuestros principios democráticos que garantizan el derecho del pueblo a pasar juicio fiscalizador sobre todas las acciones y determinaciones del Gobierno." *Trans Ad de P.R.*, 174 DPR a la pág. 67. Ello, a su vez, promueve la transparencia en la función gubernamental, estimulando, así, la sana administración pública. *Bhatia Gautier v. Gobernador*, 199 DPR a las págs. 80–81.

Sin embargo, el derecho de acceso a información pública depende, en primer lugar, de que la información solicitada sea, propiamente, pública. *Bhatia Gautier*, 199 DPR a la pág. 81. A tales efectos, el Artículo 1(b) de la Ley Núm. 5 de 8 de diciembre de 1955, conocida como Ley de Administración de Documentos Públicos de Puerto Rico, según enmendada, 3 LPRA sec. 1001(b), define documento público como:

> [T]odo documento que se origine, conserve o reciba en cualquier dependencia del Estado Libre Asociado de Puerto Rico de acuerdo con la ley o en relación con el manejo de los asuntos públicos y que de conformidad con lo dispuesto en la sec. 1002 de este título se haga conservar que se requiera conservar permanentemente o temporalmente como prueba de las transacciones o

por su valor legal. Incluye aquellos producidos de forma electrónica que cumplan con los requisitos establecidos por las leyes y reglamentos.

Es decir, "un documento público es el que un organismo estatal recibe en el curso de sus procedimientos y que está obligado a preservar." *Kilómetro 0, Inc.*, 207 DPR a la pág. 209, citando a *Trans Ad de P.R.,* 174 DPR a la pág. 69. Una vez un documento se ubica dentro de una de las categorías citadas, el mismo es de carácter público, teniendo cualquier ciudadano derecho de acceso a dicho material. *Nieves v. Junta*, 160 DPR 97, 103 (2003).

En otras palabras, una vez el documento es catalogado como público, todo ciudadano y ciudadana tiene legitimación activa para solicitar y acceder a tal información. *Kilómetro 0, Inc.*, *supra*, citando a *Colón Cabrera*, 170 DPR a la pág. 589. Así pues, en la medida en que todo ciudadano tiene el derecho a inspeccionar cualquier documento público, el acto de denegar el acceso, por sí mismo, causa al solicitante un daño claro, palpable y real. *Íd.*, citando a *Ortiz*, 152 DPR a la pág. 177. Cuando el Estado injustificadamente impide al ciudadano inspeccionar un récord público, lesiona su derecho fundamental a estar informado. *Ortiz, supra*.

Cuando el Estado reclama la confidencialidad de algún documento público, este **"tiene la carga de probar que satisface cualquiera de las excepciones antes enumeradas".** *Colón Cabrera*, 170 DPR a la pág. 591. Por consiguiente, la negación por parte del Estado a la divulgación de información pública debe estar fundamentada y justificada, pues "[n]o bastan meras generalizaciones". *Santiago v. Bobb y El Mundo, Inc.*, 117 DPR 153,159 (1986). Así pues, le corresponde al Estado el peso de justificar cualquier reclamo de confidencialidad. *E.L.A. v. Casta Developers*, 162 DPR 1, 11 (2004).

Sin embargo, el derecho al acceso a información pública no es absoluto, ni ilimitado, sino que pueden existir intereses apremiantes

del Estado que justifiquen un reclamo de confidencialidad de su parte. *Trans Ad de P.R.*, 174 DPR a la pág. 68; *Angueira v. JLBP*, 150 DPR 10, 24 (2000). Para que triunfe un reclamo de confidencialidad, el Estado debe demostrar precisa e inequívocamente la aplicabilidad de alguna de las siguientes excepciones: (1) que una ley así lo declara; (2) que la comunicación está protegida por algún privilegio evidenciario; (3) que la divulgación de la información puede lesionar derechos fundamentales de terceros; (4) que se trate de un confidente, según la Regla 515 de Evidencia de 2009, 32 LPRA Ap. VI, o (5) que sea información oficial conforme a la Regla 514 de Evidencia de 2009, 32 LPRA Ap. VI. *Kilómetro 0, Inc.*, 207 DPR a la pág. 210, citando a *Santiago*, 117 DPR a la pág. 159.

El examen judicial al cual deberá someterse cualquier reclamo de confidencialidad de documentos e información pública dependerá de la excepción que invoque el Estado como fundamento vis à vis el pedido de información. *Ortiz*, 152 DPR a la pág. 178. En particular, cuando el Estado le niega a un ciudadano el acceso a información en su poder, sobre la base de lo dispuesto en una ley o un reglamento, dicha ley o reglamento será evaluada utilizando el escrutinio judicial "estricto". *Íd.*; *Bhatia Gautier*, 199 DPR a la pág. 82; *Colón Cabrera*, 170 DPR a la pág. 593. Al momento de invocar alguna de las excepciones precitadas, el Estado no puede negar el acceso a la información pública de forma caprichosa o arbitraria. *Colón Cabrera*, 170 DPR a la pág. 590.

Para ser sostenido bajo este examen judicial, la ley o reglamento debe cumplir con los siguientes requisitos: (i) que caiga dentro del poder constitucional del gobierno; (ii) que propulse un interés gubernamental apremiante; (iii) que el interés gubernamental no esté directamente relacionado con la supresión de la libertad de expresión; y (4) que la restricción no sea mayor de

la necesaria para propulsar dicho interés. *Ortiz, supra*; *Soto*, 112 DPR a las págs. 493-494. Por eso, toda ley que pretenda ocultar información a un ciudadano bajo el palio de la confidencialidad tiene que justificarse a plenitud y contener normas claras y precisas que permitan identificar adecuadamente el material y las circunstancias en que habrá de aplicarse la norma de accesibilidad. *Angueira*, 150 DPR a las págs. 24-25. **Aquella legislación que no contenga estándares apropiados para determinar el tipo de documento e información que habrá de estar sujeta al escrutinio público y que, por el contrario, establezca una norma de confidencialidad absoluta, no puede superar el rigor de la cláusula constitucional que garantiza el derecho a la libre expresión**. *Íd*; *López Vives v. Policía de P.R.*, 118 DPR 219, 233 (1987).

III.

Por su parte, la Ley de Acceso fue promulgada a los fines de implantar una política pública de acceso a la información pública; ordenar, organizar y pautar mecanismos procesales sencillos, ágiles y económicos de acceso real a los documentos e información pública; consignar principios e instrumentos de garantía al acceso; ordenar la designación de Oficiales de Información en cada entidad gubernamental; y para otros fines relacionados. *Exposición de Motivos* de la Ley 141-2019.

El Artículo 3 de la Ley 141, 3 LPRA sec. 9913, reafirma la política pública del Estado Libre Asociado de Puerto Rico del modo siguiente:

(1) **La información y documentación que produce el gobierno se presume pública y accesible a todas las personas por igual**.

(2) La información y documentación que produce el gobierno en sus estudios, transacciones y en el ejercicio de la autoridad pública, de manera directa o delegada, son patrimonio y memoria del pueblo de Puerto Rico.

(3) **El derecho constitucional de acceso a la información requiere la transparencia gubernamental**.

(4) **Toda información o documento que se origine, conserve o reciba en cualquier dependencia del Gobierno**, aunque se encuentre bajo la custodia de un tercero, **se presume público y debe estar accesible al Pueblo y la prensa**.

(5) **El derecho de acceso a la información pública es un pilar constitucional y un derecho humano fundamental**.

(6) El acceso a la documentación e información pública tiene que ser ágil, económico y expedito.

(7) Toda persona tiene derecho a obtener la información y documentación pública, sujeto a las normas y excepciones aplicables.

(8) El Gobierno de Puerto Rico establece en la presente Ley **una política de apertura a la información y documentación, que incluya la disponibilidad de la tecnología y los avances necesarios para hacer valer el derecho de los solicitantes a acceder a la información y documentación publica de forma oportuna, objetiva, veraz, completa, reutilizable, procesable y disponible en formatos accesibles, inalterados e íntegros**. (Énfasis suplido).

Con el propósito de llevar a la práctica la aludida política pública, la Ley de Acceso requiere que todas las entidades gubernamentales designen, de entre sus empleados o funcionarios, Oficiales de Información, quienes se encargarán de producir la información pública solicitada de manera expedita para ser inspeccionada, reproducida o ambas, según se solicite. Art. 5 de la Ley 141-2019, 3 LPRA sec. 9915. De igual modo, antes de ser recientemente enmendada, esta ley establecía términos cortos, de diez (10) días, para hacer entrega o hacer disponible la información solicitada. Art. 7 de la Ley 141-2019, 3 LPRA sec. 9917.[5]

---

[5] La Ley 141-2019 fue enmendada por la Ley 156 de 13 de diciembre de 2025 (Ley 156-2025). El Artículo 7 fue enmendado para establecer un término de no más de veinte (20) días laborables para que los Oficiales de Información produzcan la información pública solicitada cuando se trate de información que conste en un documento o expediente que no exceda de trescientos (300) folios o su equivalente o su antigüedad sea menor a tres (3) años. En el caso de documentos o expedientes de más de trescientos (300) folios o su equivalente o su antigüedad sea mayor a tres (3) años, el término para facilitar la información no deberá exceder de treinta (30) días laborables. Asimismo, si la solicitud se hace en una oficina regional el término para producir la información no podrá ser mayor de treinta (30) días.

Los Oficiales de Información cumplen con los parámetros del estatuto si, según las preferencias del solicitante, realizan una de estas acciones: a) hacen la información disponible al solicitante en las oficinas de la entidad gubernamental para su inspección y reproducción; b) envían información al solicitante por correo electrónico; c) envían copia de la información por correo federal (*First Class*), siempre y cuando, el solicitante esté dispuesto a pagar por sello y otros costos asociados; o d) proveen al solicitante una dirección de internet (URL) de una página web con instrucciones para acceder a la información solicitada. *Íd*. Además, el precitado Artículo 7 dispone que "[t]oda decisión de denegar la divulgación de información pública tiene que especificar por escrito los fundamentos jurídicos en los que se basa la denegatoria o negativa de entregarla en el término establecido".[6] Art. 7 de la Ley 141-2019, *supra*.

Por otra parte, si la entidad gubernamental deniega la entrega de la información solicitada, o no contesta dentro del término establecido, el solicitante podrá recurrir al TPI. Para ello la Ley 141establece un recurso de revisión especial. Art. 9 de la Ley 141, 3 LPRA sec. 9919.

Finalmente, el Artículo 12 de la Ley 141 establece que dicha ley deberá ser interpretada "**en la forma más liberal y beneficiosa para la persona solicitante de información pública**". 3 LPRA sec. 9922. (Énfasis nuestro).

IV.

Por otro lado, la Ley 122-2019, 3 LPRA sec. 9891 *et seq.*, persigue promover el eficiente manejo de datos para beneficio de los ciudadanos. En cuanto a la definición de "datos públicos", el

---

[6] La Ley 156-2025 añadió lo siguiente: **"[n]o se podrá divulgar información que haya sido expresamente clasificada como confidencial en alguna ley, reglamento o determinación judicial previo a la solicitud de información"**. (Énfasis provisto).

Artículo 3(c) de la Ley 122-2019, 3 LPRA sec. 9893, dispone, en lo

pertinente, como sigue:

> Aquella información documentada, o que debe ser documentada por un servidor público o por un tercero autorizado por la ley o por éste; incluye todo documento, ya sea de forma física o electrónica, que se origine, conserve o reciba en cualquier Organismo Gubernamental de acuerdo con la ley o en relación con el manejo de los asuntos públicos y que se requiera conservar permanentemente o temporeramente como prueba de las transacciones o su valor legal, de acuerdo a las disposiciones de la Ley Núm. 5 de 8 de diciembre de 1955 [...]; incluye además toda información de procedencia pública o que surgiere del ejercicio de la autoridad pública o como producto del empleo de recursos públicos o de autoridad pública, directa o indirectamente delegada.

Por otro lado, el Artículo 4 de la Ley 122-2019, 3 LPRA sec.

9894, establece, en lo pertinente, lo siguiente:

> Todo reclamo de confidencialidad o de privilegio que haga cualquier Organismo Gubernamental para proteger y evitar la divulgación de un dato deberá realizarse conforme los siguientes criterios:
> a. **que una ley así lo dispone**;
> b. **que el dato está protegido por alguno de los privilegios evidenciarios** que pueden invocar los ciudadanos;
> c. **que revelar el dato puede lesionar derechos fundamentales de terceros**;
> d. que se trate de la **identidad de un confidente**; o
> e. que sea "información oficial", conforme a la Regla 514 de las Reglas de Evidencia de Puerto Rico. (Énfasis provisto).

Asimismo, la Ley 122-2019 establece las siguientes

excepciones a la divulgación de datos públicos:

> [...]
> iv. Información pública que aplique **alguno de los privilegios reconocidos en la Constitución de los Estados Unidos o de Puerto Rico, leyes y Reglas de Evidencia**, incluyendo la Información Oficial e Información Oficial-Decisional en Procedimientos Deliberativos sobre Política Pública, según reconocido por la jurisprudencia;
> [...]
> vi. **Información que si fuera divulgada podría invadir la privacidad de un tercero o lesionar derechos fundamentales**,
> vii. **Información sobre confidentes o encubiertos**; investigaciones y/o procesamiento que incida en que a un ciudadano se le prive de un juicio justo e imparcial, o **información que ponga en peligro la seguridad física de cualquier Persona**;
> viii. **Sumario del Ministerio Público,** el cual es

privilegiado, o el (work product) que obre en el expediente investigativo, o que contenga información y/o documentación **relacionada a una investigación en curso**;

[…]

xi. **Todo tipo de información relacionada a la dirección física, número de teléfono, información de contacto de emergencia, número de seguro social, número de tarjeta de crédito, información contributiva/financiera, actividad bancaria, información confidencial de terceros privados**, secretos de negocio, planillas contributivas, débito o número de acceso que sea recopilada o mantenida por el Organismo Gubernamental; […]  (Énfasis suplido).

V.

En cuanto a la Ley del FEI, su Artículo 17, 3 LPRA sec. 99w, dispone lo siguiente:

Artículo 17. Necesidad de Confidencialidad para Proteger la investigación.

(1) **Con anterioridad a la radicación del informe final** el Fiscal Especial no podrá divulgar, excepto al Panel, cualquier información obtenida durante el curso de su investigación.

(2) A fin de preservar la confidencialidad de las investigaciones y los derechos de las personas imputadas, el Panel **no podrá divulgar la información que le haya sido sometida y prohibirá el acceso del público a los procesos que ventile.  Por vía de excepción**, en los casos en que le sea requerido, el Panel **podrá divulgar** información o datos bajo su control cuando tal divulgación:

(a) No interfiere indebidamente con alguna **acción judicial o investigación pendiente**;

(b) no priva a la persona del derecho a un juicio justo o a una sentencia imparcial;

(c) **no constituye una intromisión irrazonable en la privacidad**;

(d) **no revela la identidad de una fuente confidencial de información**;

(e) **no expone al público técnicas o procedimientos investigativos que afecten el curso de estas investigaciones**, y

(f) **no expone la vida o la seguridad física de funcionarios, personas y testigos**. (Énfasis provisto).

En el ejercicio de la facultad que le fuera delegada, la OPFEI promulgó el Reglamento Núm. 9483 de 13 de julio de 2023, Reglamento para la Administración, Conservación y Disposición de Documentos Públicos ("Reglamento 9483").  En lo atinente a la controversia que nos ocupa, el Artículo 10 del Reglamento 9483 establece que "[c]onforme a las disposiciones legales y

reglamentarias se establecerá el carácter confidencial de documentos que obren en los expedientes de casos criminales". Asimismo, en cuanto a la solicitud de inspección o de copias de documentos, el Artículo 12 del Reglamento dispone que "[q]uedan excluidos de acceso, inspección y solicitud de copias, expediente y documentos u objetos que, por disposición expresa de alguna ley especial, reglamento, regla procesal u orden del tribunal deberán permanecer fuera del escrutinio público o sean de naturaleza confidencial".

Por su parte, con relación a los archivos investigativos, en particular investigaciones criminales, la Ley 205-2005, 3 LPRA sec. 291 *et seq.*, establece la confidencialidad de la información obtenida en una investigación de dicha índole. En particular, el Artículo 13 de la Ley 205-2005, *supra*, dispone lo siguiente:

> **La información obtenida como resultado de la investigación realizada es confidencial** y debe mantenerse en un expediente investigativo, el cual no puede ser objeto de inspección, examen ni divulgación **mientras se conduce la investigación**. La información así recopilada **puede ser divulgada una vez concluida la investigación** conforme las normas que adopte el Secretario mediante reglamento**, excepto** en aquellos casos en que surjan las siguientes situaciones:
>
> (a) **una ley o reglamento declare la confidencialidad de la información**;
>
> (b) **se revele información que pueda lesionar derechos fundamentales de terceros**;
>
> (c) **la comunicación esté protegida por alguno de los privilegios evidenciarios** que pueden invocar los ciudadanos;
>
> (d) se trate de la **identidad de un confidente**;
>
> (e) sea **información oficial** conforme a las Reglas de Evidencia;
>
> (f) se r**evelen técnicas o procedimientos de investigativos**. 3 LPRA sec. 292j. (Énfasis nuestro).

Por consiguiente, el sumario fiscal, esto es el expediente del Ministerio Público que contiene las declaraciones juradas y la

prueba del fiscal, se mantiene privado y secreto, al menos hasta culminar la investigación y comenzarse el proceso acusatorio. *Silva Iglecia v. P.F.E.I.*, 137 DPR 821, 834 (1995), citando a *Santiago v. Bobb y el Mundo, Inc.*, 117 DPR a la pág. 163. Aun después de una acusación criminal el descubrimiento de prueba a favor del acusado no incluye el material acumulado en el sumario o expediente fiscal que constituye producto del trabajo del Ministerio Público, en el sentido de interpretación de la evidencia recopilada, los objetivos, métodos y técnicas investigativas especiales. *Íd.*; véase, además, Regla 95(d) de Procedimiento Criminal, *supra.* No obstante, la ley específicamente permite, sujeto a las excepciones arriba dispuestas, la divulgación del sumario fiscal, una vez culminado el proceso penal.

## VI.

Por último, destacamos que las notas y análisis que hacen los fiscales que representan al Ministerio Público se consideran material privilegiado. Regla 95(d) de Procedimiento Criminal, *supra.* En particular, la Regla 505 de Evidencia, 32 LPRA Ap. VI, R. 505, contiene una disposición expresa en cuanto al privilegio del producto del trabajo del abogado:

> REGLA 505. Renuncia a los Privilegios de Abogada o Abogado-Cliente; Contadora o Contador Público Autorizado-Cliente; Renuncia al Privilegio para el Producto del Trabajo Realizado por una Parte o sus Representantes en Anticipación o Como Parte de un Litigio
>
> […]
>
> **(2) Privilegio para el producto del trabajo: Significa la protección provista a información que es el producto del trabajo de una parte o de la persona que es abogada,** consultora, fiadora, aseguradora o agente de dicha parte, preparada u obtenida en anticipación de, o como parte de una investigación o procedimiento civil, administrativo o penal." (Énfasis provisto).

En conexión, la doctrina es que este privilegio se extiende a proteger la "interpretación de la evidencia recopilada". E. L. Chiesa

Aponte, *Derecho Procesal Penal de Puerto Rico y Estados Unidos,* Colombia, Ed. Forum, 1993, Vol. III, sec. 28.2, pág. 337; es decir, dicho privilegio solamente se extiende a las "impresiones mentales, teorías legales y estrategias", *Ades v. Zalman,* 115 DPR 514, 525 n.3 (1984).

## VII.

Concluimos que procede la revocación de la Sentencia, pues la misma parte de una premisa jurídica errada, entiéndase, que la totalidad del sumario fiscal del Panel es confidencial, sin excepción alguna, aun luego de culminadas la investigación y procesamiento penal correspondientes.    En efecto, tanto la ley orgánica del Departamento de Justicia (3 LPRA sec. 292j), como la Ley del Panel (3 LPRA sec. 99w), reconocen que, culminado el procesamiento penal, y sujeto a ciertas excepciones en cuanto a ciertas categorías de información, se puede divulgar el sumario fiscal.

Aunque las referidas leyes disponen ciertas excepciones a la publicidad del sumario fiscal en este contexto, el TPI no podía, sin primero recibir prueba y examinar en cámara los documentos solicitados, determinar qué porciones del sumario fiscal podían válidamente no divulgarse por encajar dentro de alguna de las referidas excepciones.    Adviértase que el peso de la prueba para demostrar que un documento público no está sujeto a divulgación, al amparo de alguna excepción dispuesta por ley, corresponde al Estado (en este caso, al Panel).    En este caso, el Panel no ha cumplido con su carga probatoria[7].

---

[7] Incluso, más allá de no presentar prueba, algunos de los planteamientos del Panel son insuficientes, de su faz.  Por ejemplo, el Panel plantea que parte de lo solicitado está cobijado por el privilegio abogado-cliente.  No obstante, dicho privilegio únicamente aplica a comunicaciones entre un funcionario gubernamental y su abogado, cuando la comunicación se da en el contexto de asesoría jurídica a dicho funcionario.  En este caso, el Panel no ha planteado que los documentos solicitados contengan este tipo de comunicación y, por su naturaleza, es altamente improbable que estos en efecto contengan este tipo de comunicación.  Otros planteamientos son, de su faz, inmeritorios; por ejemplo, los contratos entre el Panel y un fiscal, por definición, no contienen información del tipo que la ley exime de divulgación.

Por ejemplo, presumiblemente parte del material solicitado, como los informes parciales, y el informe preliminar del Departamento de Justicia, sometidos al Panel, podría considerarse, una vez examinados, como *work product* no sujeto a divulgación. No obstante, sin examinar dichos documentos o recibir prueba al respecto, el TPI no tenía forma de concluir que, en efecto, dichos documentos no debían ser divulgados.

Asimismo, es posible, por ejemplo, que parte de los documentos solicitados revelen la identidad de algún confidente, contengan información cuya divulgación afecte derechos fundamentales de terceros, o revelen las técnicas o métodos de los fiscales. No obstante, sin examinar los documentos en cuestión no es posible determinar qué podría no divulgarse. Subrayamos, incluso, que si un documento contiene información que puede divulgarse y otra que no puede divulgarse, procedería que el TPI considere si el documento puede divulgarse, pero alterado para tachar la información que no tiene que divulgarse.

Como puntualizáramos previamente, un reclamo de confidencialidad por parte del Estado está limitado a: (1) una ley o un reglamento así específicamente lo declara; (2) la comunicación está protegida por algún privilegio evidenciario; (3) revelar la información puede lesionar derechos fundamentales de terceros; (4) se trate de la identidad de un confidente conforme a la Regla 515 de Evidencia de 2009, 32 LPRA Ap. VI, R. 515; o (5) es información oficial bajo la Regla 514 de Evidencia. Véanse, *Colón Cabrera v. Caribbean Petroleum*, 170 DPR a la pág. 591; *Nieves v. Junta, supra*; *Ortiz v. Dir. Adm. de los Tribunales*, 152 DPR a la pág. 177.

Más aún, "[p]ara que el Estado prevalezca, **deberá presentar prueba y demostrar la existencia de intereses apremiantes de mayor jerarquía** que los valores protegidos y el derecho de libertad de información de los ciudadanos". *E.L.A. v. Casta*, 162 DPR 1, 12

(2004); *Angueira v. J.L.B.P.*, 150 DPR a la pág. 24. En conexión, los tribunales tenemos el deber de ser "cautelosos en conceder livianamente cualquier pedido de confidencialidad del Estado". *Santiago*, 117 DPR a la pág. 159.

Al evaluar si procede reconocer el privilegio, "[l]as alternativas de inspección en cámara o proveer acceso limitado al expediente confidencial siempre están disponibles". *Bhatia Gautier*, 199 DPR a la pág. 86, citando a E.L. Chiesa Aponte, Tratado de derecho probatorio, República Dominicana, Ed. Corripio, [s. año], T. I, pág. 310.

En el caso de referencia, el TPI no recibió prueba, ni examinó los documentos solicitados, por lo cual dicho foro no estaba en posición de concluir que la totalidad de lo solicitado estaría sujeto a una excepción dispuesta por ley a la norma general sobre divulgación de documentos públicos. Al reanudarse el trámite de este caso, el TPI deberá evaluar la prueba que pueda presentar el Panel e inspeccionar en cámara los documentos solicitados para estar en posición de determinar qué documentos, o porciones de documentos, pudiesen estar cobijados por alguna de las excepciones antes reseñadas.

Resaltamos que, si bien legítimo es el interés del Estado en proteger los derechos de terceros y de víctimas de delito, así como el de proteger sus procesos deliberativos durante una investigación y procesamiento penal, también es legítimo, y tiene peso, como cuestión estatutaria y constitucional, proteger el derecho de la ciudadanía a obtener información pública con el fin de promover la transparencia en la cosa pública y sujetar al Estado a una debida rendición de cuentas, con lo cual se desalienta el posible mal uso de la autoridad gubernamental.

## VIII.

Por los fundamentos que anteceden, se revoca la Sentencia apelada y se devuelve el caso al TPI para la continuación de los procedimientos de forma compatible con lo aquí resuelto y expuesto.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

El juez Pérez Ocasio disiente sin opinión escrita.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones